RICHARD MAGRO vs. WARREN H. BYINGTON.

Middlesex.   February 8, 1962. — May 3, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, & CUTTER, JJ.

Negligence, Gratuitous undertaking, Motor vehicle.

In an action for personal injuries by an employee of a service station
against a customer of the station, evidence that the defendant, while
watching the installation of a radiator in his automobile by the plaintiff
during a forty-five minute period one afternoon, handed bolts to the
plaintiff or put bolts in the radiator himself, and when it was installed
got into the automobile and started its motor at the request of the plain-
tiff, who wanted to see if there were any leaks, did not require a finding
that the defendant conferred a benefit upon the plaintiff or his employer
by his activities but acquired no benefit therefrom himself, and war-
ranted a finding that the defendant was liable for ordinary negligence in
allowing the automobile to move forward and injure the plaintiff when
its motor was started.

TORT.   Writ in the Superior Court dated March 25, 1959.
The action was tried before Kirk, J.

Leo Michael Lazo, (Walter I. Badger, Jr., & Louis Karp
with him,) for the defendant.

Samuel H. Cohen, (Vincent Galvin with him,) for the
plaintiff.

WILKINS, C.J.   This action of tort is by an employee of
a service station for injuries due to negligent operation by
the defendant of his automobile which was in the station for
repairs.   There was a verdict for the plaintiff.   The de-
fendant's one exception is to the denial of his motion for a
directed verdict.

The defendant concedes that there was evidence of his
negligence (see Ghiz v. Wantman, 337 Mass. 415), but con-
tends that the relationship of the parties was such that
there could be recovery only for gross negligence.

We state facts which the jury could have found.   On the
morning of February 25, 1959, the defendant brought his
car to the service station in Medford to have the radiator
repaired.   In the early afternoon he returned, and found
the car in the yard with no one working on it.   The radia-

tor had been removed and sent out to be fixed.

About five or six minutes after the defendant's arrival the radiator was brought back and the plaintiff drove the car into the garage. The front of the car was stopped three feet from the rear wall. The plaintiff put the gear shift into neutral, put the emergency brake on, and started installing the radiator. He "dropped the radiator in . . . it's heavy and everything . . . he had to drop it in just right and when it fell in place the bolts had to go through, and he asked the defendant to start them off, and he did — he started the bolts off on either side of the radiator." "When I [the plaintiff] put the radiator in, I asked him [the defendant] just to put one bolt in and start it off for me, that's all. It takes two people."

The plaintiff put in new hose clamps and anti-freeze, and wanted to see if there were any leaks. He asked the defendant to start the motor. The defendant got into the car on the right side. He closed the door and started the engine. The plaintiff was leaning against the radiator. The hood was up. The car went forward twice, pinning the plaintiff against the wall.

There was a push-button starter to the car. Pressing a button under the dash board would cause the car to start regardless of what gear it was in. When the car moved forward the first time, the defendant "let up on the gas and the car came back." He attempted to put his foot on the brake but "hit the gas pedal," and the car went forward a second time. He did not look at the "gear box" to determine whether the car was in neutral or in gear. The defendant was in the garage with the plaintiff for forty-five minutes.

The defendant relies upon such cases as *Bagley* v. *Burk-holder*, 337 Mass. 246. His contention is, in brief, that the defendant was conferring a benefit upon the plaintiff and his employer from which the defendant acquired no benefit nor advantage; that he helped in two respects by putting in bolts and by starting the car; and that he could be liable only for gross negligence, of which there was no evidence.

The jury were not obliged to accept the defendant's the-

ory of the relationship. They did not have to find that based on the bolt episode the defendant was assisting in the repair operation as a whole. He testified that during the forty-five minutes that he spent in the garage with the plaintiff, ''I was just watching him and handing him a bolt, or putting a bolt in myself'' in the radiator. On the circumstance of starting the car, it was open to the jury to find that it was to the defendant's advantage to have the repair job completed as soon as possible. See *Beaulieu* v. *Lincoln Rides, Inc.* 328 Mass. 427, 428–429. Cf. *Epstein* v. *Simco Trading Co. Inc.* 297 Mass. 282, 284; *Allen* v. *Allen,* 299 Mass. 89, 90; *Bagley* v. *Burkholder,* 337 Mass. 246, 249–250.

*Exceptions overruled.*