JAMES M. BUKER *vs.* JOHN W. MELANSON & another.[1]

Barnstable.   May 16, 1979. — September 4, 1979.

Present: HALE, C.J., DREBEN, & KASS, JJ.

*Evidence*, Prima facie, Best and secondary. *Negligence*, Horse, Gratui-
  tous undertaking. *Practice, Civil*, Master.

The defendants in a civil action could not complain that the judge
  instructed the jury on an alternate negligence theory where they
  raised no objection to the instruction at trial. [328]
In an action to recover for injuries sustained by the plaintiff when he
  fell off a horse as he was attempting to school it under the direction
  of his employer, there was sufficient evidence to warrant a finding
  that the defendant employer was negligent [328-329]; the finding
  that the plaintiff acted under an independent contract to school the
  horse did not preclude a finding that the defendant was liable for
  ordinary negligence where there was evidence that the defendant
  derived a business advantage from undertaking to instruct the
  plaintiff in the schooling of the horse [329-330].
A master's report was timely filed under Mass.R.Civ.P. 53(e) (1), as
  amended, where there were numerous requests by both parties for
  what were in effect enlargements of time for filing of the report,
  each of which was assented to by the other party and allowed by a
  judge of the Superior Court, and where the report was filed within
  the time allowed in response to the last of those requests. [330]

---

[1] Melpet Stables, Inc.

In a civil action, the judge did not err in admitting in evidence a
photostatic copy of a statement signed by the defendant, even
though the signature was not authenticated, where a finding was
warranted that the original writing was unavailable through no
serious fault of the proponent and where the jury were competent
to infer the authenticity of the signature by comparing it to other
signatures which the defendant had admitted as genuine. [330-331]

CIVIL ACTION commenced in the Superior Court on
December 9, 1975.

The case was tried before *McGuane*, J., a District Court
judge sitting under statutory authority.

*Alan A. Green* for the defendants.

*Robert E. Noonan* (*J. Sheffield Dow* & *Robert A. In-
dresano* with him) for the plaintiff.

KASS, J. The defendants appeal from a judgment en-
tered on a jury's special verdicts. See Mass.R.Civ.P. 49(a),
365 Mass. 812 (1974).[2] Specifically, they urge, that the
court erred (1) in charging the jury on the issue of the
defendants' negligence because that issue had not been
properly raised by the plaintiff's complaint; (2) that the
evidence was insufficient to support a finding of negli-
gence; (3) that a photocopy of an undated letter was im-
properly admitted in evidence; and (4) that a master's
report was improperly (untimely) filed.

On the basis of the record, the jury could have found
the following facts: In January, 1975, the defendant Mel-
pet Stables, Inc. (Melpet), which operated a stable for the
sale, exchange, schooling, boarding and letting of horses
for riding, hired the plaintiff as a laborer. The defendant
Melanson was the treasurer and manager of Melpet. In
May, Melanson directed the plaintiff to pick up the horse
of one Coffin for boarding. Sometime after the Coffin
horse was boarded at Melpet, the plaintiff saw it rear

---

[2] The jury found, among other things, that the defendants were 90%
negligent, that the plaintiff was 10% negligent, that the plaintiff's
damages amounted to $62,000 from each defendant, and that the
plaintiff was acting under an independent agreement with a third
party at the time of his injury.

while Coffin's daughter was riding it. The plaintiff report-
ed the incident to Melanson, who suggested that the
plaintiff tell Coffin about it. Coffin agreed with the plain-
tiff to pay for the necessary "schooling" of the horse. The
plaintiff, in undertaking to school the horse, acted under
an independent agreement with Coffin. At the time of the
plaintiff's injury, Melanson, who had been training
horses for more than forty years, was present and direct-
ed the lesson. Under his direction, one Bishop, another
employee, worked with the horse. The horse proved a
recalcitrant pupil and threw Bishop three times. Melan-
son directed the plaintiff into the saddle and instructed
him in what to do when he got there. The plaintiff's stint
as equine teacher came to an abrupt and unhappy end
when the horse reared and fell on him. That mishap re-
sulted in back injuries to the plaintiff.

The plaintiff brought an action against both Melanson
and Melpet, alleging that they were negligent (the latter
through its agent, Melanson) in the supervision and di-
rection of the schooling of the horse, and that he was
injured as a consequence of their negligence.[3] The case
was referred to a master; hearings began April 22, 1976,
and were concluded July 15, 1976. In his final report the
master found that the plaintiff was employed by the de-
fendants, that he was injured in the course of his employ-
ment, that the defendants failed to carry workmen's com-
pensation insurance, and that the defendants were negli-

---

[3] Two theories of liability were asserted, one based on negligence
and the other on the employer-employee relationship. Had the jury
found that the plaintiff acted as an employee, G. L. c. 152, § 66, would
have governed the rights of the parties, assuming, as the parties ap-
parently did, that the employer should, but did not, become insured
for workmen's compensation. That statute provides, inter alia, that in
an action for a personal injury incurred in the course of employment,
it shall not be a defense that the employee was negligent or that the
employer was not negligent. See *Barrett* v. *Transformer Service, Inc.*,
374 Mass. 704, 705 (1978). Since the jury found that the plaintiff was
not injured in the course of his employment, no recovery could be
derived from the employer-employee relationship.

gent. The defendants' motions to strike the master's report were denied. After the jury trial, the defendants' motions for judgment notwithstanding the verdict and for a new trial on the negligence issue were also denied.

1. The defendants urge that they were surprised by the fact that the judge instructed the jury on the issue of negligence, having expected, they say, only a charge on the employer-employee relationship. In view of the allegations of negligence in the plaintiff's complaint, particularly directed to Melanson's directions of the schooling of the horse, it is difficult to credit the defendants' argument. In any event, the defendants failed to object to the fact that the judge had instructed the jury on the alternate negligence theory, and so the issue may not now be raised on appeal. An appeal based on erroneous instructions can be made only if objections to the instructions were raised at trial. Ses Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974). See also *Narkin* v. *Springfield*, 5 Mass. Ct. 489 (1977); *Worcester* v. *Eisenbeiser*, 7 Mass. App. Ct. 345, 349 (1979).

2. As to the defendants' assertion that the record lacks evidence of negligence on the part of the defendants, our examination of the record discloses ample support for the jury's finding of negligence. The master had made a finding of negligent direction of the horse's tutorial by Melanson. Under Mass.R.Civ.P. 53(e)(3), 365 Mass. 820 (1974), the findings of a master, upon their introduction in evidence, establish a prima facie case as to the facts found by him. *"[P]rima facie* evidence is 'evidence,' remains evidence throughout the trial, and is entitled to be weighed like any other evidence upon any question of fact to which it is relevant." *Cook* v. *Farm Serv. Stores, Inc.*, 301 Mass. 564, 566 (1938).

Although prima facie evidence "may be met and overcome by evidence sufficient to warrant a contrary conclusion" *Anderson's Case,* 373 Mass. 813, 817 (1977), the defendants' evidence was sufficient, at best, only to overcome the compelling effect of the master's findings and to

leave the question of negligence to the jury on all the evidence, including the master's report. There was enough in that evidence, and in the report, to warrant the jury's conclusion that the defendant was negligent. See *New England Acceptance Corp.* v. *American Manufacturers Mut. Ins. Co.*, 4 Mass. App. Ct. 172, 177 (1976), *S.C.* 373 Mass. 594 (1977).

But if, the defendants argue, the plaintiff was acting under an independent contract with the owner of the horse at the time of his injury (as the jury found), then Melanson's instructions constituted a "gratuitous undertaking" for the plaintiff's benefit. Under such circumstances, liability could not be imposed on either defendant, if Melanson's conduct constituted only ordinary negligence; it would have to amount to gross negligence or wilful, wanton or reckless conduct. *Massaletti* v. *Fitzroy*, 228 Mass. 487, 508 (1917). Both sides agree, however, that liability for ordinary negligence can be imposed if the jury could have found that the defendants derived some business advantage from Melanson's instructions in the schooling of the horse. *Beaulieu* v. *Lincoln Rides, Inc.*, 328 Mass. 427, 428-429 (1952). *Magro* v. *Byington*, 344 Mass. 255, 257 (1962). Melanson/Melpet's business interest in schooling Coffin's horse is not indiscernible. Melpet's agreement with Coffin to board and care for his horse was jeopardized by the erratic behavior of the animal; by permitting, or causing, the plaintiff to school the horse, Melpet accommodated a service to Coffin which was likely to keep the horse at the Melpet stables.[4]

The jury could reasonably find the defendants liable for ordinary negligence on the evidence. They had the master's findings. They heard testimony that Melanson operated the stables, had vast experience with horses, and had agreed to board the Coffin horse. Melanson was the plain-

---

[4] Indeed, the plaintiff's injury apparently convinced Coffin that the horse was too dangerous for his daughter. He had it removed from Melpet Stables and sold.

tiff's boss. The plaintiff could not have schooled the Coffin horse without Melanson's permission. Melanson's presence and active involvement in supervising the schooling of the horse were designed to maintain a business advantage. The finding that the plaintiff acted under an independent contract at the time of his injury does not require a different result. Cf. Restatement (Second) of Torts § 410 & Comment c (1965).

3. The master's report was timely filed, and hence was properly introduced in evidence at trial. Under Mass.R.Civ.P. 53(e) (1), as amended, 367 Mass. 917 (1975), the master has forty-five days from the close of evidence to file the report, unless the judge on motion or otherwise shall alter the time. Here there were numerous requests from both the plaintiff and the defendants for what were in effect enlargements of time for filing of the master's report. Each party's request was assented to by the other party, and each was allowed by a judge of the Superior Court. The report was filed within the time allowed in response to the last of those requests.[5]

4. The defendant argues that a photostatic copy of a statement signed by Melanson was improperly received in evidence because of the best evidence rule and the fact that the signature was not authenticated. Melanson, however, acknowledged his signature on other exhibits in evidence and the jury were competent to draw their own inferences as to the authenticity of the offered writing by comparing it to the signatures which Melanson had admitted as genuine. *Noyes* v. *Noyes*, 224 Mass. 125, 130 (1916).

The "best evidence" rule is preferential, not exclusionary. *Fauci* v. *Mulready*, 337 Mass. 532, 540 (1958). Secondary evidence may be introduced if, as here, the judge finds that the original writing is unavailable through no seri-

---

[5] When they failed to object to the denial of their motions to strike the master's report, the defendants lost the right to raise the issue of timeliness in any event.

ous fault of the proponent. *Id.* at 542. See also *Old Colony Trust Co.* v. *Shaw*, 348 Mass. 212, 219 (1964). The decision to admit the letter and let the jury give it the weight they deemed justified was a matter within the judge's discretion and was fully justified on the evidence before him. *Nunes* v. *Perry*, 113 Mass. 274, 276 (1873). *Pataskas* v. *Judeikis*, 327 Mass. 258, 259-260 (1951).

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*