Rehearing en banc granted by
order filed 1/17/01; published
opinion of 10/12/00 is vacated

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

———————————

Nos. 96-4662(L)
(CR-94-41-V)

———————————

United States of America,

Plaintiff - Appellee,

versus

Corey Angle, et al.,

Defendants - Appellants.

———————————

O R D E R

———————————

The court amends its opinion filed October 12, 2000, as follows:

On page 15, second full paragraph, lines 6-7 -- the sentence is corrected to end "and proven beyond a reasonable doubt."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff-Appellee, | |
| v. | No. 96-4662 |
| COREY ANGLE,<br>Defendant-Appellant. | |
| UNITED STATES OF AMERICA,<br>Plaintiff-Appellee, | |
| v. | No. 96-4672 |
| JAMES EDWARD PHIFER, a/k/a Rick<br>Daye,<br>Defendant-Appellant. | |
| UNITED STATES OF AMERICA,<br>Plaintiff-Appellee, | |
| v. | No. 99-4187 |
| JAMES EDWARD PHIFER, a/k/a Rick<br>Daye,<br>Defendant-Appellant. | |

Appeals from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Voorhees, District Judge.
(CR-94-41-V)

Argued: October 29, 1999

Decided: October 12, 2000

Before WIDENER and MURNAGHAN,* Circuit Judges, and
James H. MICHAEL, Jr., Senior United States District Judge
for the Western District of Virginia, sitting by designation.

_____

Affirmed in part, vacated in part, and remanded by published opinion.
Senior Judge Michael wrote the opinion, in which Judge Widener
joined.

_____

## COUNSEL

**ARGUED:** James Frank Wyatt, III, Robert Adams Blake, Jr., LAW
OFFICES OF JAMES F. WYATT, III, Charlotte, North Carolina, for
Appellant Phifer; Thomas Franklin Loflin, III, LOFLIN & LOFLIN,
Durham, North Carolina, for Appellant Angle. Frank DeArmon Whit-
ney, Assistant United States Attorney, Charlotte, North Carolina, for
Appellee. **ON BRIEF:** Mark T. Calloway, United States Attorney,
Charlotte, North Carolina, for Appellee.

_____

## OPINION

MICHAEL, Senior District Judge:

On December 6, 1994, a federal grand jury in the Western District
of North Carolina indicted defendant-appellant James Edward Phifer
a/k/a Rick Daye ("Phifer") and defendant-appellant Corey Eugene
Angle ("Angle"), with John Henry Angle, Smith L. Turner, and Rob-
ert Lee Smith on one count of conspiracy unlawfully to possess with
intent to distribute, and to distribute, cocaine in violation of 21 U.S.C.
§ 846. All five defendants were also indicted on one count of criminal
forfeiture in violation of 21 U.S.C. § 853. In addition, the grand jury
indicted Phifer on two counts of money laundering under 18 U.S.C.

_____

* Judge Murnaghan heard oral argument in this case but died prior to
the time the decision was filed. The decision is filed by a quorum of the
panel pursuant to 28 U.S.C. § 46(d).

2

§ 1956 and one count of money laundering forfeiture under 18 U.S.C. § 981. The government subsequently moved to supersede the indictment on July 12, 1995 to add an illegal gambling business count under 18 U.S.C. § 1955 and a firearms count against Phifer. Defendants Turner and Smith entered pleas of guilty to count one of the indictment.

The jury trial of the three remaining defendants, Phifer, Angle, and John Henry Angle, began on October 23, 1995. After the government and the defense completed their cases, the district court ruled that the drug conspiracy count against all three defendants, as well as the two money laundering counts against Phifer, should go to the jury. The forfeiture matters, i.e. the count of criminal forfeiture as to all five defendants and the count of money laundering forfeiture under 18 U.S.C. § 981 against Phifer, were bifurcated to await the resolution of the remaining counts by trial. The jury found both Phifer and Angle guilty of the count of drug conspiracy, found Phifer guilty of both counts of money laundering, and acquitted John Henry Angle of the count of drug conspiracy. On August 19, 1996, the district court sentenced Phifer to 292 months in custody and Angle to 210 months.

This court has jurisdiction to hear the appeal of this matter pursuant to 28 U.S.C. § 1291. On appeal, the defendants make numerous challenges to their convictions and sentences. After carefully considering the record in this case, the briefs, and the parties' arguments, this court affirms the district court in part and vacates and remands in part, for the reasons set out below.

I.

A. <u>THE TRIAL</u>

After seven days of testimony, a jury convicted Phifer and Angle of conspiracy to possess with the intent to distribute, and to distribute, cocaine. The jury also convicted Phifer of two counts of money laundering pursuant to 18 U.S.C. § 1956 and ordered the forfeiture of his residence for its use in facilitating drug trafficking.

During the trial, eight eyewitness co-conspirators testified against Phifer: Larry Reginald Cartledge, Robert Lee Smith, J. Lee Sturgis,

3

Robert "Snake" Chambers, Perry Jerome Knox, George Allen Scott Redman, Robert Lee Griffin, and Earl Leslie Gray. Five eyewitness co-conspirators testified against Angle: J. Lee Sturgis, Robert "Snake" Chambers, Robert Lee Griffin, Linda Peak Walker, and Earl Leslie Gray. In addition to the eyewitness testimony, numerous law enforcement officers testified about searches and undercover operations including: (1) the discovery of $14,000 in currency and an Uzi pistol in Phifer's bedroom in 1987, (2) the discovery of Phifer's palmprints on a container of cocaine in 1988, (3) a sting operation witnessed by an undercover agent in 1990 where Phifer sold cocaine to an informant, (4) the seizure of $8500 in currency and a .38 caliber pistol from Angle during a takedown and arrest on March 1, 1993, (5) a pen register and long distance phone calls in 1993-94, (6) tax information and employment security records showing that Phifer and Angle had insufficient legitimate or reported income to support their standard of living, (7) the discovery of marked drug money in Angle's bedroom dresser, and (8) the seizure of assault weapons, pistols, and scanners on December 14, 1994.

The prosecution supported this testimony regarding the drug conspiracy with evidence of Phifer's laundering of his drug money into the purchase of two different vehicles in 1990, titling a red 1984 Corvette in his brother's name, titling a 1955 Chevy pickup truck in his mother's name, and switching the tags on the Chevy pickup truck.

1. Cocaine Conspiracy Evidence

Beginning as early as March of 1987 when law enforcement officers searched Phifer's bedroom, and continuing until the date of their arrest on December 14, 1994, Phifer and Angle were central players in a cocaine and crack conspiracy operating in both Iredell and Rowan counties in mid-western North Carolina, particularly in and around the city of Statesville and the town of Cleveland. Over the eight-year period, the conspiracy involved as many as a dozen different conspirators and as much as thirty kilograms of powder cocaine and three kilograms of crack. Local authorities profiled Phifer as a major cocaine conspirator sometime in 1987; authorities believed Angle entered the conspiracy as early as 1990.

Without setting out that testimony witness by witness, consideration of the record reveals eyewitness testimony and corroborating

4

evidence of actual drug transactions involving Phifer and Angle on various occasions, in sum extending over a period of years. The record testimony is also complete from an eyewitness seller who sold the two vehicles to Phifer. An eyewitness testified that Phifer often hid the cocaine in a can or similar container. There was direct evidence of Phifer carrying a pistol, and evidence of seeing a pistol in the laundry room of Phifer's residence during one of the drug deals. In addition, there was evidence of marked money being used in a drug deal and being found thereafter in a dresser drawer in Angle's residence.

Additionally, the prosecution introduced evidence buttressing the testimony of the eyewitnesses, including the incriminating evidence found in executing search warrants, palm prints of Phifer on a jar containing crack cocaine, sting operations, a search of Angle and his car, various income tax returns, pen registers, $2150 of marked money in a sum of $8099 found in Angle's bedroom during execution of a search warrant, and seizures of various weapons, two police scanners, and $2000 in currency found in executing a search of Phifer's bedroom. All this evidence tended to one degree or another to corroborate and state in greater detail the evidence of the various eye witnesses.

2. Money Laundering Evidence

In the summer of 1990, well within the time frame of the drug conspiracy, Phifer purchased two vehicles from co-conspirator Larry Cartledge - a red 1984 Corvette and a 1955 Chevy pickup truck. Phifer titled the two cars in the names of his mother and brother, respectively. In the case of the 1955 Chevy pickup, Phifer apparently purchased a second 1955 Chevy pickup and switched license tags to prevent authorities from tracing the car. The jury found that the transactions were designed in part to conceal the fact that he was the true owner of the vehicles and convicted Phifer of both counts of laundering monetary instruments.

B. SUPPRESSION HEARING

During the trial, it became apparent that there was an error in the search warrant affidavit, leading Angle's counsel to move to suppress all evidence and the fruits thereof discovered during the search. The

5

court interrupted the trial and held an extensive suppression hearing. That hearing revealed that the warrant named a trailer to be searched which was not in fact the one intended to be searched, though the two trailers were located in close proximity to one another. The intended trailer was in fact the one that was searched, and the one in which incriminating evidence was found.

The court found that an innocent mistake had been made in the affidavit for the search warrant, stemming from problems associated with communications between law enforcement agencies in Statesville, and Cleveland, North Carolina, and the Rowan and Iredell Counties' Sheriff's Offices, all of which agencies were attempting to keep informed as to the search and its progress.

The court concluded that the mistaken identity of the trailer was an honest error, that the affidavit had been prepared and tendered in good faith, that the trailer intended to be searched was in fact the trailer which was searched, was the trailer occupied by Corey Angle, the intended target of the search, and was the trailer in which incriminating evidence was found.

The court concluded that the suppression motion should not be granted.

C. <u>SENTENCINGS</u>

Both Phifer and Angle were sentenced on August 19, 1996, and the district court filed their judgment and commitment orders on September 23, 1996. At both sentencing proceedings, the government relied on a thorough and detailed presentence report ("PSR") prepared by Probation Officer Christine S. Nickel. The presentence reports' estimates of the drug quantities and drug types reasonably foreseeable to both Angle and Phifer were based on systematic analyses of the testimony of the witnesses and the admitted evidence.

At Phifer's sentencing, the district court accepted the PSR's total offense level of 40 (a base offense level of 38 for the drug quantity with a two-point enhancement for possession of a firearm). The district court reduced the criminal history category to Category I from

6

the PSR's recommendation of Category II. Phifer faced an adjusted sentencing range of 292 to 365 months and the district court sentenced him to 292 months.

At Angle's sentencing, the district court reduced the recommended base offense level from 38 to 34. With a two-point enhancement for the possession of a firearm, Angle's total offense level was 36. The government conceded to a criminal history category reduction from Category III to Category II because of confusion over Angle's criminal record. This reduced Angle's sentencing range from 360 months to life to 210 to 262 months. The district court sentenced Angle to 210 months.

On August 26 and 27, 1996, Angle and Phifer, respectively, filed timely notices of appeal of their convictions and sentences. On March 20, 1998 and again on March 3, 1999, the district court denied Phifer's motions for a new trial. Also on March 3, 1999, Phifer noted his appeal of the district court's denial of his new trial motions.

On appeal, the defendants make various challenges to their convictions and sentences. First, Phifer alleges that the district court abused its discretion in failing to instruct the jury on the statute of limitations issue regarding the drug conspiracy. Second, Angle alleges that the district court committed reversible error in denying his motion to suppress evidence derived from a search of his residence. Third, Angle contends that the district court erred in admitting into evidence photocopies of marked currency. Fourth, Phifer argues that the district court was clearly erroneous when it failed to make specific findings in determining the drug quantity and drug type attributed to Phifer at his sentencing. Finally, Angle also alleges that the district court erred in determining the drug quantity and drug type attributed to Angle at his sentencing. Again, after carefully considering the record in this case, the briefs, and the parties' argument, this court affirms the district court's rulings in part but vacates and remands in part with respect to Phifer and Angle's sentencings.

II.

Defendant Phifer first contends that the district court erred in failing to instruct the jury on the statute of limitations on the drug con-

7

spiracy charge. A district court's refusal to charge the jury on an instruction requested by a defendant constitutes reversible error only when the requested instruction: (1) is correct, (2) is not substantially covered by the court's charge to the jury, and (3) deals with some point in the trial so important that failure to give the requested instruction seriously impairs the defendant's ability to conduct his defense. See United States v. Lewis, 53 F.3d 29, 32 (4th Cir. 1995). Further, for a court's refusal to give an instruction that involves a theory of defense to be reversible error, there has to be a foundation in the evidence for that theory. See Matthews v. United States, 485 U.S. 58, 63 (1988); United States v. Hicks, 748 F.2d 854, 857 (4th Cir. 1984).

Phifer argues that the issue of whether an offense occurred within the statute of limitations period is an issue for the jury to decide. By failing to instruct the jury on the statute of limitations, Phifer argues, he was deprived of his ability to argue a key theory of his defense - that if the drug conspiracy existed at all, it had terminated more than five years before December 6, 1994.

The statute of limitations for a conspiracy charged pursuant to 21 U.S.C. § 846 is five years. See 18 U.S.C. § 3282. The government, however, is not required to prove an overt act to demonstrate the existence of a § 846 conspiracy. See United States v. Shabani, 513 U.S. 10, 15 (1994). "A conspiracy is deemed to continue as long as its purposes have neither been abandoned nor accomplished, and no affirmative showing has been made that it has terminated." United States v. Arnold, 117 F.3d 1308, 1313 (11th Cir. 1997).

In the present case, the district court expressly instructed the jury that to convict Phifer of Count I, the drug conspiracy charge, it "should first determine whether or not the conspiracy existed as alleged." (J.A. 632.) Because Count I alleged that the conspiracy existed from 1987 through "the present" - or the date of the original indictment, December 6, 1994 - and because the prosecution occurred within the five year period following December 6, 1994, it is not barred by any statutory limitation. The district court's instructions, taken as a whole, covered the point of law which Phifer complains the district court misinstructed. Phifer's allegation of error is without merit.

8

III.

Defendant Corey Angle contends that the district court erred in failing to suppress the evidence discovered during a search of his home pursuant to a search warrant. Specifically, he sought to suppress the photocopy of the money seized which had been found in his dresser drawer. Angle contends that the officer knowingly made materially false representations to the issuing magistrate regarding the mobile home to be searched.

As set forth above, at the suppression hearing during the middle of trial, the district court denied Angle's motion to suppress and was correct in doing so. In United States v. Leon, 468 U.S. 897 (1984), the United States Supreme Court established the good faith exception to the exclusionary rule. The Supreme Court held that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Id. at 922. Nevertheless, the Court found that an "officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." Id. at 922-23 (citations omitted).

None of the four situations outlined in Leon which would cause an officer's reliance on the validity of a search warrant to be unreasonable is applicable under the facts of this case. See id. at 923.

Under Leon, the proper test of an officer's good faith is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 922 n.23. This objective test requires a determination of the knowledge of a reasonable officer, not an examination of an officer's subjective motives. See United States v. Clutchette, 24 F.3d 577, 582 (4th Cir. 1994); United States v. George, 971 F.2d 1113, 1123 (4th Cir. 1992). Here, the officer's actions in applying for and executing the challenged search warrant fall under Leon's good faith exception to the exclusionary rule.

9

As the district court found, it was objectively reasonable under the circumstances for the officer to have believed he had described the correct mobile home to search, and he did in fact search the correct mobile home. The officer knew that Angle was the target of the sting, and knew where Angle's mobile home was located. The district court's denial of Angle's motion to suppress is affirmed.

IV.

Corey Angle also contends that the district court erroneously admitted into evidence photocopies of marked money given to the undercover agent and of the seized money from the dresser drawer in Angle's residence under the best evidence rule. This court reviews the district court's evidentiary rulings for abuse of discretion. See Super-market of Marlinton, Inc. v. Meadow Gold Dairies, Inc., 71 F.3d 119, 126 (4th Cir. 1995).

The best evidence rule requires the admission of the "original" of a "writing" or "recording" to prove the content of the writing or recording. See Fed. R. Evid. 1002. The best evidence rule, however, also permits the admission of duplicates "unless (1) a genuine question is raised as to the authenticity or continuing effectiveness of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Fed. R. Evid. 1003.

The photocopy of the marked money that the detective made before she turned the money over to the undercover officer for use in the sting operation was the actual piece of evidence that she kept in her custody. She photocopied the $2400 and, in her own handwriting, wrote the date of July 15, 1994, on the photocopy. After she gave the money to the undercover officer, she faxed her photocopy to the Rowan County Sheriff's Office, and also gave to that office another copy of the original photocopy.

Both the fax and the extra copy were used to compare the serial numbers of the money seized from Corey Angle's dresser drawer with the serial numbers of the money that was turned over to the under-cover officer for use in the sting operation. On $2150 of the $2400, the serial numbers were identical. Before the seized money was trans-

10

ferred, a photocopy of the seized money was made to keep for the records of the transferring office.

The photocopy identified and introduced at trial as Exhibit 30 was in fact the "original" document that the detective used to convey the serial numbers of the marked money. Thus, the original writing as prepared by the detective, the photocopy of the marked money with the date written on the photocopy, was properly introduced into evidence and the trial court did not abuse its discretion.

Angle has not raised any question of doubt about the authenticity or accuracy of the photocopy of the seized money, labeled Exhibit 35 at trial, but rather has claimed that its use at trial was "unfair" because the jury was not able to view the actual money. The actual seized currency was not available for admission at Angle's trial because it had been returned to the Iredell County Sheriff in the normal course of business six months after the seizure. There was never any dispute about whether the money was handled correctly or any dispute about a chain of custody on any of the photocopies. After the money was back in the hands of the Iredell County Sheriff's Department, months after the sting operation was complete, the money was placed back into official use in other undercover operations and therefore was not available for display at trial. Angle did not identify any prejudice that resulted from the district court's admission of Exhibit 35, other than the blanket assertion that the admission was "unfair." Exhibit 35 was properly introduced into evidence and the trial court did not abuse its discretion. The evidentiary rulings of the district court are affirmed.

V.

Both Phifer and Angle challenge the district court's findings in determining the drug quantity and drug type attributed to each of them at sentencing. Angle invokes the new Supreme Court case of Apprendi v. New Jersey, 120 S. Ct. 2348 (2000), as authority for the proposition that the judicial finding at sentencing of Angle's base offense level of 34 is inappropriate because corresponding facts necessary to support such a finding were not alleged in the indictment. Apprendi governs this case as to both defendants because Apprendi was decided while this case was on direct review. See Teague v. Lane, 489 U.S. 288, 303-04 (1989).

11

The Court announced as a constitutional rule in <u>Apprendi</u> a principle that had been suggested as one in <u>Jones v. United States</u>, 526 U.S. 227, 243 n.6 (1999) [hereinafter <u>Jones I</u>] (questioning constitutionality of enhancing penalties through judicial findings by a preponderance of the evidence). In <u>Apprendi</u>, the Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S. Ct. at 2362. Under <u>Apprendi</u>, sentencing factors that support a specific sentence within the statutorily prescribed penalty range are still properly submitted to a judge to be found by a preponderance of the evidence. <u>See id.</u> at 2359 n.11.

In <u>McMillan v. Pennsylvania</u>, 477 U.S. 79 (1986), the Court first coined the term "sentencing factor" as distinct from an element of a crime: the former being something not found by a jury but affecting the sentence imposed by the judge. <u>See Apprendi</u>, 120 S. Ct. at 2360. Every element of a crime must be proven to a jury beyond a reasonable doubt. <u>See United States v. Gaudin</u>, 515 U.S. 506, 510 (1995), <u>cited in Apprendi</u>, 120 S. Ct. at 2356. In announcing the rule in <u>Apprendi</u>, the Court specifically noted that <u>Apprendi</u> neither overrules <u>McMillan</u>, <u>see</u> 120 S.Ct. at 2361 n.13, nor makes the term "sentencing factor" devoid of meaning, <u>see id.</u> at 2365 n.19. Ultimately, a court may still consider aggravating and mitigating factors that support a specific sentence within the statutorily prescribed range when sentencing a defendant, so long as the sentence imposed is not greater than the maximum statutory penalty for the statutory offense established by the jury's verdict. <u>See id.</u>

Turning to the present matter, the issue presented is whether the different drug quantities attributed to Phifer and Angle at sentencing were elements that should have been proven to a jury beyond a reasonable doubt, or sentencing factors that were properly found by the district court judge by a preponderance of the evidence. In order to put the inquiry into perspective, a brief review of the relevant federal drug statutes is appropriate.

Phifer and Angle were convicted of The Attempt and Conspiracy statute, 21 U.S.C. § 846, which makes the penalty for conspiring to commit certain offenses the same as the penalty for those offenses.

12

Generally, 21 U.S.C. § 841(a) defines the crime that was the object of the conspiracy: namely, making it unlawful for any person, knowingly or intentionally, to manufacture, distribute, or dispense controlled or counterfeit substances. The penalties for violating § 841(a) are set forth in 21 U.S.C. § 841(b), which lists terms of imprisonment in § 841(b)(1)(A)-(D). The fallback imprisonment penalty for certain drug types is § 841(b)(1)(C), which states that "In the case of a controlled substance in schedule I or II . . . except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years. . . ." Thus, under § 841(b)(1)(C), regardless of the quantity of schedule I or II drug, a defendant convicted of a violation of § 841(a) is eligible for a term of imprisonment ranging from zero to twenty years. **1** In the other penalty sections of § 841(b)(1), the term of imprisonment is linked to quantity of drugs. For example, in § 841(b)(1)(A), based on a finding of a particular amount of drugs, the term of imprisonment ranges from ten years to life.

Historically, this court and all of her sister circuits have held that drug quantity is a sentencing factor, not an element of the crime. <u>See</u> <u>United States v. Powell</u>, 886 F.2d 81, 85 (4th Cir. 1989); <u>United States v. Thomas</u>, 204 F.3d 381, 384 (2d Cir. 2000); <u>United States v. Hester</u>, 199 F.3d 1287, 1291 (11th Cir. 2000); <u>United States v. Williams</u>, 194 F.3d 100, 107 (D.C. Cir. 1999); <u>United States v. Mabry</u>, 3 F.3d 244, 250 (8th Cir. 1993); <u>United States v. Underwood</u>, 982 F.2d 426, 429 (10th Cir. 1992); <u>United States v. Moreno</u>, 899 F.2d 465, 472-73 (6th Cir. 1990); <u>United States v. Barnes</u>, 890 F.2d 545, 551 n.6 (1st Cir. 1989); <u>United States v. Gibbs</u>, 813 F.2d 596, 599-600 (3d Cir. 1987); <u>United States v. Morgan</u>, 835 F.2d 79, 81 (5th Cir. 1987); <u>United States v. Normandeau</u>, 800 F.2d 953, 956 (9th Cir. 1986). After the Supreme Court noted in <u>Jones I</u> that precedent suggested that any fact, other than prior conviction, that could increase the penalty beyond the statutory maximum penalty, must be charged

─────────────────────────────────────────────

**1** The court notes that, although § 841(b)(1)(C) authorizes imprisonment for not more than thirty years where death or serious bodily injury occurs and in particular cases of recidivism, these are not issues in the present case and the court does not address how <u>Apprendi</u> may apply in such cases. Accordingly, in this opinion the court refers to the statutory maximum of § 841(b)(1)(C) as not more than twenty years.

in the indictment, submitted to a jury, and proven beyond a reasonable doubt, see 526 U.S. at 243 n.6, circuit courts applying Jones I interpreted this opinion as a suggestion rather than an absolute rule. Thus, they continued to view drug quantity as a sentencing factor. See, e.g., United States v. Thomas, 204 F.3d 381, 384 (2d Cir. 2000) (holding that notwithstanding Jones I, drug quantity remains a sentencing factor); United States v. Williams, 194 F.3d 100, 107 (D.C. Cir. 1999) (maintaining precedent that drug quantity is a sentencing factor because "Jones [I] never ultimately resolved the constitutional doubts it raised"). Of particular interest is the Tenth Circuit case of United States v. Jones [hereinafter "Circuit Jones"], which analyzed the issue of drug quantity in light of the Supreme Court Jones I, holding "Because Jones [I] `suggests' rather than establishes a new principle of constitutional law, 119 S.Ct. at 1224 n.6, we adhere to the doctrine of stare decisis and decline to reexamine whether the penalty provisions of § 841(b)(1) violate the Fifth and Sixth Amendments." Circuit Jones, 194 F.3d 1178, 1186 (10th Cir. 1999), vacated, Jones v. United States, 120 S. Ct. at 2739 (2000)[hereinafter Jones II]. In Jones II, the Supreme Court vacated the judgment of Circuit Jones and remanded for further consideration in light of Apprendi. See Jones II, 120 S.Ct. 2739. The Supreme Court's remand of Circuit Jones indicates the possible or even likely view of the Court that Apprendi does change the traditional interpretation that drug quantity is always a sentencing factor.

One of the traditional reasons for refusing to consider quantity as an element of a drug offense was based on the determination that, by listing the quantities in 21 U.S.C. § 841(b), labeled "penalties," rather than in 21 U.S.C. § 841(a), entitled "unlawful acts," Congress intended quantity to be a sentencing factor, not an element of the crime. However, the Court in Apprendi made clear that labels are an unacceptable solution to making the "constitutionally novel and elusive distinction between `elements' and `sentencing factors.'" 120 S.Ct. at 2365 (citations omitted); see also Jones I, 526 U.S. at 233 ("The `look' of the statute . . . is not a reasonable guide to congressional intentions."). The Court further explained, "the relevant inquiry is one not of form, but of effect--does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" Apprendi, 120 S.Ct. at 2365. Accordingly, for the present matter, if the findings of particular drug quantities expose the

14

defendants to sentences greater than authorized by the jury's verdict of guilty under 21 U.S.C. § 846, then the requirement of Apprendi has not been satisfied.

Phifer and Angle's convictions for violating § 846 make the penalties listed in § 841(b) applicable to them. There was no drug quantity charged in the indictment (J.A. 52) or submitted to the jury (J.A. 626-27). Accordingly, applying Apprendi, the jury's finding of a violation of § 846 authorizes sentences for the defendants under § 841(b)(1)(C) to terms of not more than twenty years.

Pursuant to Apprendi, in order for imprisonment penalties under § 841(b)(1)(A) or (B) to apply to the defendants, such that findings of particular drug quantities could expose them to imprisonment terms greater than § 841(b)(1)(C)'s catch-all statutory maximum of twenty years, the drug quantity must be treated as an element: charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt. Where no drug quantity is charged in the indictment or found by a jury, but a jury has found a violation of § 841(a), the standard statutory term of imprisonment is not more than twenty years. See § 841(b)(1)(C). In these cases, where the quantity is not charged, the drug amount is still a proper aggravating or mitigating factor to be considered by the judge in determining a sentence at or below the statutory maximum sentence. See Apprendi, 120 S. Ct. at 2359 n.11. Thus, the judge still may determine the amount of drugs by a preponderance of the evidence for the purposes of calculating the offense level and relevant conduct under the United States Sentencing Guidelines. However, if the determination of the judge with respect to quantity leads to a suggested sentence range under the Sentencing Guidelines that is greater than the twenty year statutory maximum, the judge only may sentence at or below the statutory maximum penalty, i.e. not more than twenty years. See U.S.S.G. § 5G1.1(a).

Angle received a sentence of 210 months for his violation of § 846. (J.A. 512.) Because Angle's sentence is not more than twenty years, the sentence comports with § 841(b)(1)(C), which is the applicable penalty for this case, as explained above. Contrary to Angle's position on appeal, consideration by the district court judge of the quantity of drugs in determining the appropriate sentence at or below the statutory maximum was proper under Apprendi, also explained above.

15

However, notwithstanding the finding that the district court was in compliance with <u>Apprendi</u> when it sentenced Angle, as detailed in the following section of the opinion, the district court must make additional findings with respect to Angle's sentence. <u>See infra</u> Part VI.

Phifer received a sentence of 292 months for his violation of § 846.[2] (J.A. 504-05.) The court rejects Phifer's challenge to the district court's attribution of drug quantities, finding that the district court's attribution of quantities meriting a base offense level of 38 was proper. Thus, with respect to Phifer, the district court properly found a quantity of drugs that directed a sentence under the guidelines in the range of 292 to 365 months. However, by sentencing Phifer to 292 months, it is clear that the district court did not sentence Phifer in accordance with the applicable statutory penalty of § 841(b)(1)(C), as explained above, which authorizes a term of imprisonment not more than twenty years. Rather, the district court's findings with respect to quantity make it likely that the defendant was sentenced under § 841(b)(1)(A), which authorizes a maximum term of life imprisonment. This court notes that, because the district court did not have benefit of <u>Apprendi</u>, the district court was reasonable, and followed this court's precedent, when the district court considered its findings of drug quantities attributable to Phifer a sentencing factor, thereby sentencing Phifer under § 841(b)(1)(A). However, this court's rule of <u>Powell</u>, 886 F.2d at 85, and its progeny, that drug quantity is a sentencing factor that may be proven by a preponderance of the evidence, must be abandoned to the extent that the rule is inconsistent with <u>Apprendi</u>. <u>See, e.g.</u>, <u>United States v. Aguayo-Delgado</u>, 220 F.3d 926 (8th Cir. 2000) (abandoning Eighth Circuit law upholding drug quantity as sentencing factor to the extent it does not comport with <u>Apprendi</u>). In light of <u>Apprendi</u>, drug quantity is an element of § 841(b)(1)(A), because § 841(b)(1)(A) allows findings of quantity to expose defendants to greater penalties than the maximum penalties authorized in the fallback penalty provision for schedule I and II drug offenses, § 841(b)(1)(C).

_____

**2** Phifer also was sentenced to 240 months on each count under 18 U.S.C. § 1956 (a)(1)(B)(i), to run concurrently with one another and with the sentence for the drug count. (J.A. 504-05.) These sentences are unaffected by this decision.

16

The district court's finding of the quantity of drugs attributable to Phifer suggested a term of imprisonment under the Sentencing Guidelines that increased Phifer's term of imprisonment beyond the applicable statutory maximum. Under Apprendi, such factor must be found by a jury beyond a reasonable doubt if it is to be acted upon, or, pursuant to U.S.S.G. § 5G1.1(a), the statutory maximum shall be considered the guideline sentence. Although the district court judge did not have the benefit of Apprendi at the time of sentencing, the error of exceeding the twenty year statutory maximum is not harmless and must be corrected on re-sentencing. Phifer's sentence for the conviction of § 846 is vacated in light of Apprendi and the case is remanded for re-sentencing consistent with this opinion.

VI.

Finally, defendant Angle contends that his sentence should be vacated and his case remanded for re-sentencing with instructions that the district court make specific findings of fact proved by a preponderance of the evidence as to the type and amounts of cocaine attributable to him. The PSR recommended that Angle be held responsible for at least 6.5 kilograms of cocaine powder and 3 kilograms of cocaine base, having a marijuana equivalency of 61,300 kilograms. Angle's PSR contains the exact same factual findings as the PSR compiled for Phifer, including reference to "several individuals previously prosecuted for illegal drug distribution" who named Phifer as their source of cocaine, a description of how their testimony resulted in the number of grams of cocaine attributed to Phifer by Special Agent Boone, and specific references to the testimony of Earl Gray. (J.A. 664.) The PSR determined that Angle's base offense level is 38.

Angle objected to the findings in the PSR with respect to its drug quantity determination, arguing that the testimony by the government's witnesses was unreliable. At his sentencing hearing, the district court heard argument from Angle challenging the drug quantity determination and the evidence relied upon by the probation officer in making those determinations. After hearing the response of the government, the district court stated that "on examination of the evidence and the preponderance thereof, the Court finds the amount of drugs attributable to the Defendant in this matter would give him a Level 34 base level instead of 38. Consequently, that changes the

17

Guidelines." (J.A. 456.) In its "Statement of Reasons" form attached to Angle's criminal judgment, the district court stated it adopted the factual findings and guideline application in Angle's PSR except that it sustained "defendant's objection to drug quantity and finds a base offense level of 34 rather than 38; finds criminal history category III overstates defendant's history and finds appropriate Criminal History to be II." (J.A. 517-18.)

Unlike at Phifer's sentencing, the district court did not impliedly adopt the factual findings in the Angle's PSR regarding attributable drug weight, but instead determined that Angle deserved a lower base offense level than recommended in the PSR. However, the court did not specify the exact quantity nor the identity of the drugs involved, nor how it came to the conclusion that the defendant should have a base offense level of 34. Thus, with respect to defendant Angle, this court cannot conduct an effective appellate review of the district court's drug quantity determinations according to the proper standards. See, e.g., United States v. Cook, 76 F.3d 596, 604 (4th Cir. 1996) (holding government has burden of proof at sentencing to establish drug quantities attributed to a defendant by a preponderance of the evidence); United States v. Lamarr, 75 F.3d 964, 972 (4th Cir. 1996) (base offense level in a drug conspiracy case is determined by the amount of drugs "reasonably foreseeable . . . within the scope of [the] unlawful agreement"); United States v. Uwaeme, 975 F.2d 1016, 1018-19 (4th Cir. 1992) (holding accuracy is important but mathematical precision is not required when determining reasonable approximation of drug quantity for sentencing). This court remands the case so that the district court can make the required factual findings with respect to defendant Angle and the drug types and quantities attributable to him.

VII.

Upon review of the record in this case, the briefs, and the parties' argument, this court concludes that the district court did not abuse its discretion in failing to instruct the jury on the statute of limitations issue regarding the drug conspiracy. Second, the district court did not commit reversible error in denying defendant Angle's motion to suppress evidence derived from a search of his residence. Third, the district court did not err in admitting into evidence photocopies of

18

marked currency and seized currency. Fourth, although the district court properly attributed drug quantities to Phifer establishing a base offense level of 38, it is error under <u>Apprendi</u> to allow judicial findings of quantity to cause the penalty to exceed the applicable statutory maximum penalty. Accordingly, Phifer's sentence with respect to the § 846 conviction must be vacated and remanded for re-sentencing in light of <u>Apprendi</u> and in accordance with this opinion. Finally, the district court failed to determine the drug quantity and drug type attributed to Angle at his sentencing. Defendant Angle's case is remanded to the district court to make the necessary findings as to drug quantity and type.

<u>AFFIRMED IN PART, VACATED IN PART, AND REMANDED</u>

19