NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-903                                        Appeals Court

COMMONWEALTH  vs.  EMMANUEL DeJESUS.

No. 13-P-903.

Middlesex.      October 1, 2014. - March 23, 2015.

Present:  Rapoza, C.J., Katzmann, & Wolohojian, JJ.


Evidence, Best and secondary, Hypothetical question.  Witness,
     Police officer.  Entrapment.



     Complaint received and sworn to in the Malden Division of
the District Court Department on March 10, 2010.

     The case was tried before Dominic J. Paratore, J.


     Merritt Schnipper for the defendant.
     Erin J. Anderson, Assistant District Attorney, for the
Commonwealth.


     WOLOHOJIAN, J.  Police officers working undercover arranged

to purchase "crack" cocaine from a man known as "Paulie," whom

they suspected of operating in tandem with the defendant.  A

photocopy of the currency to be used for the purchase was made

beforehand.  The primary issue on appeal is whether the best

evidence rule required that the currency, rather than the

photocopy, be admitted at trial. Concluding that it does not, we affirm the defendant's convictions.[1]

Background.[2] Officers of the Everett police department were conducting an undercover operation to purchase crack cocaine. The operation was focused on a man known as "Paulie," whom they suspected of working with the defendant. On March 9, 2010, Sergeant Paul Strong photocopied six twenty-dollar bills and then gave five of them to Detective Robert Hall, who was to arrange the undercover purchase from Paulie. Strong, who was part of the team assigned to surveil the defendant, kept a photocopy of the bills in his pocket.[3]

Hall and Paulie arranged to meet near the corner of Broadway and Gladstone Street in Everett. Hall arrived by car at the arranged time and place; Paulie arrived on foot and got into Hall's car. A purchase was arranged, and Hall gave Paulie five of the bills that had been photocopied. Paulie proceeded to make two telephone calls. After the second call, Paulie left the car and walked up Gladstone Street. Five minutes later,

---

[1] The defendant was convicted of possession of cocaine with intent to distribute, in violation of G. L. c. 94C, § 32A; distribution of cocaine, in violation of G. L. c. 94C, § 32A; and a drug violation near a school zone, in violation of G. L. c. 94C, § 32J.

[2] We recite the facts in the light most favorable to the Commonwealth. Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).

[3] All the bills were photocopied on a single page.

Paulie returned and removed five plastic baggies of crack cocaine from his mouth; he gave four of them to Hall. Paulie was then arrested.

Meanwhile, Strong had been watching the defendant's residence. He observed the defendant drive away from his home, pick up a passenger, meet briefly with a woman who approached his (the defendant's) car, and then drive to the corner of Gladstone and School Street, where he stopped. This was near where Hall and Paulie had arranged to meet. Although neither officer saw Paulie and the defendant meet, Strong saw Paulie return to Hall's car.

Strong then followed the defendant, who was stopped, arrested, and searched. The serial numbers of five twenty-dollar bills found in his right front pants pocket matched those of the bills Strong had photocopied at the beginning of the operation. Strong compared the bills with the photocopy and placed a check mark next to each bill with a matching serial number. Later, during booking at the station, the defendant removed from inside his pants twenty-two additional packets of cocaine similar in size and appearance to those transmitted through Paulie.

We discuss additional facts as they are pertinent to our discussion below.

Discussion. Currency. The Everett police department has limited currency available to use in undercover drug operations such as the one here. As a result, its practice is to maintain only a photocopy of the currency used in a particular operation and then to reuse the currency in subsequent undercover purchases. The department followed this policy in this case and, accordingly, the currency given to Paulie (and later located in the defendant's pocket) was not available to be introduced at trial. Instead, the Commonwealth introduced the photocopy which, as we noted above, was made before the transaction and bore the check marks that Strong made after the defendant's arrest. The defendant argues that the best evidence rule required admission of the original currency and that the check marks were inadmissible hearsay.[4] He further argues that, without the photocopy, there was no evidence that the bills in the defendant's pocket were those given by Hall to Paulie and, therefore, the evidence was insufficient to establish distribution.

"The best evidence rule provides that, where the contents of a document are to be proved, the party must either produce

---

[4] The defendant objected to the admission of the photocopy at trial; however, the nature of the objection was made at a sidebar conference that was not transcribed. We assume for purposes of this appeal that the arguments raised here were preserved below.

the original or show a sufficient excuse for its nonproduction."
Commonwealth v. Ocasio, 434 Mass. 1, 6 (2001). See Mass.
G. Evid. § 1002 (Requirement of Original [Best Evidence Rule])
(2014). The rule is "a doctrine of evidentiary preference
'principally aimed, not at securing a writing at all hazards and
in every instance, but at securing the best obtainable evidence
of its contents.'" Ocasio, supra, quoting from 2 McCormick,
Evidence § 237 (5th ed. 1999). See Buker v. Melanson, 8 Mass.
App. Ct. 325, 330 (1979) ("The 'best evidence' rule is
preferential, not exclusionary").

If currency is not a "writing" for purposes of the best
evidence rule, a photocopy can be used without accounting for
the money itself. Commonwealth v. Balukonis, 357 Mass. 721, 725
(1970). "[T]his rule is usually regarded . . . as not
applicable to any objects but writings . . . . So far, then, as
concerns objects not writings, a photographic representation
could be used without accounting for the original." Ibid.,
quoting from Wigmore, Evidence (3d ed.) § 796. See generally
Mass. G. Evid. art. X (Contents of Writings and Records).

We have not previously directly addressed whether currency
constitutes a "writing" or "record,"[5] and we need not do so in

---

[5] "'Writings' and 'records' are documents which consist of
letters, words, numbers, or their equivalent. Writings and
records do not include photographs, composite pictures, tape
recordings, videotapes, or digital images." Mass. G. Evid.

this case because "[t]he best evidence rule is applicable to only those situations where the contents of a writing are sought to be proved."  Balukonis, supra at 725.  The content of the currency here was not at issue.  It did not matter what the serial numbers on the bills were, or even whether the money was genuine or counterfeit.  All that mattered was that the photocopy of the bills made at the station at the beginning of the operation matched the bills found in the defendant's pocket at the end.  Thus, even assuming that the currency used in the drug transaction was a "writing" within the contemplation of the best evidence rule, its contents were not sought to be proved by introduction of the photocopy.[6,7]

---

§ 1001(a).  See Commonwealth v. Weichell, 390 Mass. 62, 77 (1983), cert denied, 465 U.S. 1032 (1984) (best evidence rule not applicable to photographs).

[6] Our view in this regard is consistent with that of other jurisdictions that have considered the question.  See United States v. Angle, 230 F.3d 113, 120 (4th Cir. 2000), vacated in part on other grounds by 254 F.3d 514 (4th Cir. 2001) (en banc) (photocopy of currency used in drug purchase was not subject to best evidence rule); Wingfield v. State, 363 Ark. 380, 387 (2005); Day v. State, 297 A.2d 50, 51 (Del. 1972) (failure to admit currency did not violate the best evidence rule because "the actual writings on the five dollar bills were immaterial. The only material point was the identification of the particular bills through the serial numbers recorded by the patrolman"); Strickland v. State, 175 Ga. App. 224, 225 (1985); Johnson v. State, 231 Ga. App. 114, 115 (1998); State v. Yarber, 829 S.W.2d 479, 481 (Mo. App. 1992).

[7] Moreover, even were we to assume that the best evidence rule applied, we would conclude that the judge did not abuse his discretion in admitting the photocopy given that the currency

The defendant is correct that Strong's check marks on the photocopy are hearsay because Strong made them in order to signify that the serial numbers on the bills found in the defendant's pocket matched those on the photocopy.  "[C]onduct can serve as a substitute for words, and to the extent it communicates a message, hearsay considerations apply." Commonwealth v. Gonzalez, 443 Mass. 799, 803 (2005).  See Mass. G. Evid. § 801(a) (A hearsay "statement" may include "nonverbal conduct of a person, if it is intended by the person as an assertion").  Because the defendant lodged no objection to the check marks, we review only to determine "whether, due to the jury's consideration of objectionable hearsay, 'there is a substantial risk of a miscarriage of justice.'"  Commonwealth v. Keevan, 400 Mass. 557, 562 (1987) (citation omitted).  Here, we perceive no such risk.  Strong testified that the serial numbers of the bills in the defendant's pocket matched those of the bills he had photocopied earlier in the day in anticipation of the undercover purchase.  The checkmarks added little, if anything, to this testimony.  And, although it is true that there was no direct evidence that the defendant sold the drugs to Paulie, the circumstantial evidence more than sufficed to

was unavailable only because of a neutral administrative policy driven by limited police resources.  "Secondary evidence may be introduced if, as here, the judge finds that the original writing is unavailable through no serious fault of the proponent."  Buker v. Melanson, 8 Mass. App. Ct. at 330-331.

support that conclusion beyond a reasonable doubt.  See Commonwealth v. Sepheus, 468 Mass. 160, 164 (2014) (sufficiency of evidence is measured by the admitted evidence without regard to whether it was properly admitted).

Hypothetical question.  The defendant argues that a hypothetical question posed to Detective Paul Norton[8] impermissibly tread into the province of the jury by calling for an opinion about the defendant's guilt.  The testimony at issue is set out in full, together with the question and answer that preceded it because those, too, are relevant to our discussion.

> The prosecutor:  "Can you describe for us exactly what type of transaction you believe was occurring?"
>
> Detective Norton:  "Okay.  The undercover officer, Detective Hall, arranged a meeting with what we would call a middleman.  That person doesn't have the narcotics on them, but he knows where you can get them.  So he'd take the money from that person, have them meet and wait, and then he'd go get the drugs and come back as the middleman."
>
> Defense counsel:  "Objection, Your Honor.  Can we approach, please?"
>
> The judge:  "Sure."
>
> [Discussion at sidebar.]
>
> The judge:  "Objection sustained."
>
> The prosecutor:  "Detective, I'm going to go through a series of hypothetical assumptions with you."

---

[8] Detective Norton identified himself as narcotics detective for the Stoneham police department.

The judge: "Let me -- ladies and gentlemen, what happens sometimes is a witness, such as the present witness, comes in. They have no personal knowledge, but they have an expertise in which -- and I'm going to give you an instruction on expert testimony when I give my final instructions to you -- so what the Commonwealth is going to do right now is ask his opinion -- of this witness to assume some certain facts, and then based on those facts can he run an opinion -- serve an opinion about certain things, and then ask that opinion. It's perfectly acceptable on the Rules of Evidence. And, again, it's an expert testimony offered to you because no one else can give you that type of testimony. It's outside our layperson's expertise. Here I go, here's a word expertise. But it's out of our layperson's purview or basic knowledge of things. So that's what this witness is about to do."

. . .

The prosecutor: "Detective, I'd like you -- I'd like you to assume the following facts. Let's assume that, again, there's a drug transaction and it's being set up by an undercover police officer who's made an appointment with an individual by telephone and that individual and the detective have set up a time and place, a specific time and place to meet. The individual and the detective meet in the detective's vehicle. The individual gets into the vehicle's [sic] car, the detective hands the individual money after telling the individual that he wants to buy cocaine. He hands the individual $100 in currency -- in U.S. currency. The individual leaves the detective's car, walks away, the individual enters another person's car briefly, leaves that other person's car, walks back to the detective's car, and then hands the detective a -- some four bags of cocaine. The car that the individual had entered, not the detective's car, the other car, it stopped, and in that car found two individuals, one individual found in possession of a much larger amount of bags, 22 bags. Can you broaden an opinion as to what that actually looks from your experience and expertise?"

Detective Norton: "Yes. My opinion would be that the person that the detective met and gave money was the middle person going to the dealer; went to the dealer,

> purchased the amount of drugs that the detective ordered, and brought it back to the detective from that car that it was in."
>
> The prosecutor: "And in your training and experience, is this a common method for drug deals to take place?"
>
> Detective Norton: "Yes, it is."

We agree that Norton should not have been allowed to opine hypothetically that a person in Paulie's circumstances was acting as a middleman for a person in the shoes of the defendant, particularly since Norton's previous answer had not been stricken.[9] See Commonwealth v. Tanner, 45 Mass. App. Ct. 576 (1998); Commonwealth v. Woods, 419 Mass. 366, 374-375 (1995). Hypothetical questions to a police officer are not per se impermissible; however, here the line was crossed because the hypothetical question was transmuted into a nonhypothetical comment on the actual actors. Moreover, the opinion was one in name only since it was nothing more than a factual inference that could have been drawn by, and should have been left to, the jury; it required no particular expertise. However, we conclude that no substantial risk of a miscarriage of justice resulted. See Commonwealth v. Dancy, 75 Mass. App. Ct. 175, 184-185 (2009). At bottom, Norton's opinion was merely the most obvious (and perhaps only) inference to be drawn from the facts.

---

[9] The follow-up question was permissible in that it was not an opinion on the defendant's guilt and also related to the common practice of drug dealers.

School zone entrapment.  For the first time on appeal, the defendant argues that he was entitled to an instruction on entrapment with respect to the school zone violation because he was drawn to the location by the arrangement made by Hall with Paulie.  See Commonwealth v. Lawrence, 69 Mass. App. Ct. 596, 603-604 (2007).  The issue, however, is not adequately presented because the record does not show that the police chose the location to meet with Paulie.  Moreover, for all that appears, defense counsel's failure to seek an entrapment instruction may have been strategic because the instruction would have conflicted with the theory of defense, which was that the defendant was not involved at all.

For these reasons, the convictions are affirmed.

So ordered.