NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-19                                          Appeals Court

   SCOTT GODDARD  vs.  RICHARD E. GOUCHER, trustee,[1] & another.[2]


                        No. 15-P-19.

     Plymouth.     December 1, 2015. - February 2, 2016.

        Present:  Kafker, C.J., Milkey, & Sullivan, JJ.


Real Property, Purchase and sale agreement.  Contract, Sale of
     real estate, What constitutes.  Practice, Civil,
     Stipulation, Findings by judge.  Evidence, Credibility of
     witness, Best and secondary.  Witness, Credibility.



     Civil action commenced in the Superior Court Department on
October 25, 2011.

     The case was heard by Robert J. Kane, J.


     Isaac H. Peres (Richard W. Bland, II, with him) for the
plaintiff.
     John D. Finnegan for town of Dover.


     KAFKER, C.J.  The plaintiff, Scott Goddard, appeals from a

judgment entered against him following a jury-waived trial in

_____

     [1] Of Salt Marsh Farm Trust.  Richard Goucher did not file a
brief or otherwise participate in this appeal.

     [2] Town of Dover, intervener.

the Superior Court on his complaint seeking enforcement of a 2007 purchase and sale agreement. The two issues on appeal are (1) whether the trial judge erred in concluding that Goddard and the defendant Richard Goucher failed to enter into a valid and enforceable purchase and sale agreement despite a pretrial stipulation regarding the contractual negotiations and their legal consequences, and (2) whether the trial judge erred in declining to admit secondary evidence of the purchase and sale agreement, in violation of the best evidence rule. We conclude that the judge correctly distinguished the factual elements from the legal elements in the stipulation. We further discern no error in his additional findings of fact and legal analysis regarding the validity of the purchase and sale agreement or in his weighing of the secondary evidence pursuant to the best evidence rule. We therefore affirm the judgment.

Background. The trial judge made extensive findings of fact, which we summarize below. Richard Goucher's mother, Barbara B. Goucher,[3] owned property located on Wilsondale Street (property) in Dover (town). In 2004, Barbara conveyed the property to herself as trustee of the Salt Marsh Farm Trust and executed a durable power of attorney naming Richard as her agent and attorney-in-fact. Barbara and Richard attempted to sell the

---

[3] Because Richard Goucher and his mother, Barbara Goucher, share a surname, we will refer to them hereafter by their first names to avoid confusion.

property, and in January, 2007, an interested party made an offer.[4]  Because of various wetlands on the property, Richard assembled a team, including Goddard, an environmental engineer, and Attorney Vincent O'Brien, to develop a proposal for potential permitting.  After the interested party withdrew his offer, Richard offered Goddard the property for one dollar plus the payment of back real estate taxes.

Goddard was interested in Richard's offer and in May, 2007, asked O'Brien to draft a purchase and sale agreement for the property (the agreement).  Paragraph 7 of the agreement contained a provision setting forth the purchase price of one dollar.  Paragraph 8 provided for delivery of the deed at 10:00 A.M. on an unspecified date in June, 2007, and contained a declaration that "time is of the essence of this agreement."  The agreement provided that the closing date could be extended for a period of not more than thirty days.  Goddard signed the agreement and, through O'Brien, sent the draft to Richard.  June and July passed without a closing.  During that time, Richard sent the agreement to Attorney Lawrence Hale for his review.  Hale, an experienced real estate attorney, made a number of

---

[4] By the time of the offer, Barbara was incapacitated and Richard was acting on her behalf.  Barbara died in 2010.  After the complaint and answer were filed in this case, Richard filed a suggestion of death as to Barbara, and his motion to be substituted as the defendant trustee of Salt Marsh Farm Trust was allowed.

handwritten amendments to the draft agreement, including adding language in multiple provisions making clear that Goddard, as the buyer, agreed to assume "any [and] all encumbrances of record or otherwise" as well as "[a]ny and all past, present, and future taxes" without adjustment. Richard, as attorney-in-fact for Barbara, signed the amended agreement and it was sent back to Goddard.[5] O'Brien conducted a title search on the property on Goddard's behalf.

The remaining facts were less clear and more contested. As later found by the judge based on his credibility determinations, the amendments Hale made to the agreement "caused Goddard, after consultation with O'Brien, to forego signing the amended Purchase and Sale agreement." In making this finding, the judge explicitly rejected "testimony indicating that this revised purchase and sale document was accepted and converted into a clean copy, which then with a $1 check, deed and trust was mailed out of Attorney O'Brien's office to Attorney Hale."

In the meantime, the real estate taxes on the property went unpaid, and on January 29, 2008, the town, through its tax collector, sent notice to Barbara, as trustee of Salt Marsh Farm

---

[5] The judge did not make a finding regarding the date on which the agreement was signed by Richard and sent back to Goddard. Goddard testified that the agreement was received in early August, 2007.

Trust, that $8,107.96 was due and owing.  On March 11, 2008, the town recorded a tax taking of the property in the Norfolk County registry of deeds.  The town subsequently filed an action in the Land Court, and on February 4, 2009, judgment entered foreclosing and barring all rights of redemption as to the property.

On January 29, 2010, Goddard filed with the Land Court a petition to vacate the judgment of foreclosure, asserting that he had standing as buyer under the agreement.  On June 4, 2010, the Land Court denied the petition, finding that Goddard held no interest in the property and therefore did not have standing to petition the Land Court under G. L. c. 60, § 69A.  Goddard appealed, and this court vacated the order and remanded the case to the Land Court to determine the validity of and rights conferred by the agreement.  See Dover v. Goddard, 80 Mass. App. Ct. 1103 (2011).  On November 15, 2011, the Land Court granted Goddard's petition to stay proceedings pending the outcome of the action Goddard had filed in Superior Court.

Goddard's Superior Court complaint named Richard and Barbara as defendants and alleged breach of contract against them (Count I), sought a declaration that the agreement was a valid and enforceable contract (Count II), and requested specific performance of the agreement through an order that Barbara and Richard obtain valid title from the town and convey

the property to Goddard (Count III).[6]  The town filed a motion to intervene in order to protect its interests as the owner of the property.  The motion was allowed, and the town filed an answer containing cross claims and counterclaims.[7]  Goddard, Richard, and the town entered into a pretrial stipulation that stated: "The purchase and sale Agreement . . . dated May 2007, signed by Scott Goddard and Richard Goucher as attorney-in-fact for Barbara B. Goucher, trustee of the Salt Marsh Farm Trust was a valid and enforceable contract at the time it was entered into by the parties."[8]  The trial judge concluded otherwise, expressly determining that the "revised purchase and sale agreement . . . never progressed from imperfect negotiations into an enforceable contract."  He also found no waiver of the "time is of the essence" provision.  Judgment entered against Goddard on his complaint, and he filed a timely appeal.

Standard of review.  It is well established that on appeal, we are bound by the trial judge's findings of fact, including

---

[6] Goddard's complaint also alleged inducement to enter into a contract by false pretenses (Count IV) and unfair and deceptive practices in violation of G. L. c. 93A (Count V), but these counts were voluntarily dismissed prior to trial.

[7] The Superior Court judgment dismissed the town's counterclaims and cross claims, and the town has not appealed.

[8] The parties also stipulated that "[i]f the Court finds that the Defendant breached the terms of the [agreement], Plaintiff is not entitled to, and shall not be awarded any monetary damages."

all reasonable inferences, that are supported by the evidence. Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 420 (2005). T.W. Nickerson, Inc. v. Fleet Natl. Bank, 456 Mass 562, 569 (2010). Such findings will only be set aside if clearly erroneous. Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). "The judge's legal conclusions are reviewed de novo." Anastos v. Sable, 443 Mass. 146, 149 (2004).

Discussion. 1. The purchase and sale agreement. Goddard argues that the trial judge's finding that "the parties failed to establish a valid and enforceable agreement to convey the . . . property" was clearly erroneous because it directly contradicted the parties' pretrial stipulation to the contrary. He contends that the trial judge "simply ignored" the stipulation. We disagree.

The stipulation at issue is one of both fact and law. The judge properly distinguished the factual components from the legal components of the stipulation and addressed each accordingly. He acknowledged and adopted undisputed stipulated facts. He also addressed and resolved factual disputes and gaps glossed over by the stipulation. Finally, he disregarded the legal aspects of the stipulation, particularly the incorrect and self-serving legal analysis proposed by the parties.

There is, of course, a significant difference between factual and legal stipulations. "Nothing is more common in

practice or more useful in dispatching the business of the courts than for counsel to admit undisputed facts."  Brocklesby v. Newton, 294 Mass. 41, 43 (1936).  Generally, such stipulations are binding on the parties, see Kalika v. Munro, 323 Mass. 542, 543 (1948), and respected by the courts, unless a court determines that to do so would be "improvident or not conducive to justice."  Loring v. Mercier, 318 Mass. 599, 601 (1945).  See Huard v. Forest St. Hous., Inc., 366 Mass. 203, 208-209 (1974) (stipulation that omitted "seemingly significant information" set aside and matter remanded to trial court); Stuart v. Brookline, 412 Mass. 251, 254-255 (1992) (statement of agreed facts was binding where party failed to show that facts were "omitted, misstated or inadvertently included").  See generally Mass. G. Evid. § 611(g)(1) (2015).

In contrast, stipulations regarding "the legal effect of admitted facts" require a different consideration "since the court cannot be controlled by agreement of counsel on a subsidiary question of law."  Swift & Co. v. Hocking Valley Ry. Co., 243 U.S. 281, 289 (1917).  "Parties may not stipulate to the legal conclusions to be reached by the court."  Texas Instruments Fed. Credit Union v. DelBonis, 72 F.3d 921, 928 (1st Cir. 1995), quoting from Saviano v. Commissioner of Int. Rev., 765 F.2d 643, 645 (7th Cir. 1985).  "Issues of law are the province of courts, not of parties to a lawsuit, individuals

whose legal conclusions may be tainted by self-interest." Ibid. We therefore do not hold ourselves "bound to accept, as controlling, stipulations as to questions of law." Estate of Sanford v. Commissioner of Int. Rev., 308 U.S. 39, 51 (1939).[9]

With these distinctions in mind, we turn to the particular stipulation at issue and the judge's findings of fact and legal analysis related thereto. As previously noted, the stipulation provided: "The purchase and sale Agreement dated May, 2007, signed by Scott Goddard and Richard Goucher as attorney-in-fact for Barbara Goucher was a valid and enforceable contract at the time it was entered into by the parties." As formulated, the stipulation contains undisputed facts, substantial gaps requiring further factual findings, and legal conclusions. The trial judge dealt with each appropriately. The undisputed stipulated facts are that both parties signed the agreement, as

---

[9] See, e.g., Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 114 (1939) (court not bound by legal stipulation that corporate reorganization plan was "fair and equitable"); Estate of Sanford, supra at 50-51 (court not bound by stipulated definition of administrative practice involving conclusions of law); Texas Instruments Fed. Credit Union, supra (stipulation that Federal credit unions were government units was an issue of law to which the court was not bound); Warner v. Mayor of Taunton, 253 Mass. 116, 118 (1925) (court not bound by parties' stipulation regarding jurisdiction over case); Clifford v. School Comm. of Lynn, 275 Mass. 258, 259 (1931) (court not bound by parties' stipulation that writ of mandamus should issue). See also Dodson, Party Subordinance in Federal Litigation, 83 Geo. Wash. L. Rev. 1, 13-32 (2014) (discussing stipulations and how courts generally retain discretion to disregard or override party choice).

Goddard undisputedly signed the original version prepared by O'Brien and Goucher signed the version containing the handwritten amendments made by Hale, which made significant changes to the agreement. The trial judge correctly understood that the stipulation did not state that the parties both signed the same version of the agreement.[10] The judge recognized that these facts remained unaddressed and unresolved in the stipulation and were necessary to determine whether the parties had entered into a valid and enforceable contract.

The trial judge properly concluded that he was not bound by the remainder of the stipulation providing that the agreement "was a valid and enforceable contract at that time it was entered into by the parties."[11] This was a stipulation of law seeking to bind the court regarding the legal effect of the admitted facts. See Swift & Co. v. Hocking Valley Ry. Co., 243 U.S. at 289. The judge was not, nor are we, bound to accept as controlling stipulations on questions of law, particularly where they are based on incomplete and misleading facts and an

---

[10] Even Goddard testified that the clean version incorporating Hale's amendments that O'Brien allegedly sent to Hale was unsigned.

[11] We also note that the phrase "at the time it was entered into" is left unclear. It could mean May, 2007, when the original agreement was drafted, or August, 2007, when Hale purportedly mailed Goddard the amended agreement, or yet another date.

incorrect application of legal principles.[12]  See ibid.  Those
stipulations were also self-serving.  See Texas Instruments Fed.
Credit Union v. DelBonis, 72 F.3d at 928.  This becomes
particularly clear when the second pretrial stipulation
regarding damages is considered.  The additional stipulation
indemnified Richard and any of his beneficiaries, successors,
assigns, or heirs from any monetary damages in the event that
the court found Richard breached the terms of the agreement.

   Having properly rejected the legal stipulation, the judge
undertook his own fact finding and analysis of the agreement.
We discern no error in either.  "It is axiomatic that to create
an enforceable contract, there must be agreement between the
parties on the material terms of that contract, and the parties
must have a present intention to be bound by that agreement."
Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878
(2000).  In the instant case, there were numerous additional
questions to be resolved by the trial judge to determine if an

---

   [12] It would have been preferable for the judge to have
expressly notified the parties at trial that he was considering
disregarding the stipulation.  Compare White v. Peabody Constr.
Co., 386 Mass. 121, 127 (1982) (notice of judge's decision to
convert party's 12[b][6] motion into rule 56 motion for summary
judgment prevents party surprise).  However, the gaps,
contradictions, and questionable legal conclusions reflected
therein should have put the parties on notice that the
stipulation would not be dispositive.  Moreover, Goddard has not
articulated how the proof he offered at trial would have been
any different.  In our view, the judge was well within his
authority to reject this highly problematic stipulation of law.

agreement had been reached, including whether Goddard agreed to the amendments sent back by Goucher, and whether Goddard communicated any such assent to Goucher.  The judge found that he did not.

Rather, on the basis of witness credibility determinations, the judge found that the handwritten amendments Hale made to the agreement "caused Goddard, after consultation with O'Brien, to forego signing the amended Purchase and Sale Agreement."  The judge expressly rejected testimony to the effect that a clean version of the agreement incorporating Hale's amendments, along with a check for the one dollar consideration, and a deed and trust were sent, and he concluded that the transaction was never completed.[13]

It is not for us to decide who we might find more credible but rather who the trial judge, with the advantage of seeing and hearing the witnesses, found to be more credible.  See Goddard v. Dupree, 322 Mass. 247, 248 (1948) ("The value of the

---

[13] We also note that the version with Hale's handwritten amendments does not appear to have been sent back until after the May agreement had expired by its own terms. The judge expressly found that the sale did not close in June or July, and the "time is of the essence" clause was not waived by either of the parties.  The alleged preparation of the clean version and any subsequent negotiations therefore occurred even further after the sixty-day deadline provided in the May, 2007, agreement. Nonetheless, because we discern no error in the trial judge's findings and ultimate conclusion that negotiations never progressed into a valid and enforceable agreement, we need not rely on the alternative theory of expiration and discharge.

testimony of the witnesses depended in great measure upon their appearance and their manner of testifying on the stand").  In finding that Goddard refused to accept the amended agreement, the judge concluded that the proposed agreement "never progressed from imperfect negotiations into an enforceable contract."  See Rosenfield v. United States Trust Co., 290 Mass. 210, 217 (1935).  Because the judge's findings are supported by a reasonable view of the evidence, and the rational inferences drawn therefrom, we discern no error in his finding that there was no valid and enforceable agreement for the property.  See Goddard v. Dupree, supra; Capitol Bank & Trust Co. v. Richman, 19 Mass. App. Ct. 515, 519 (1985); Mass.R.Civ.P. 52(a).

2.  Best evidence rule.  At the start of trial, the judge heard arguments on the town's motion in limine to exclude, based on the best evidence rule, the following documents:  (1) an unsigned computer print-out of a letter dated September 4, 2007, on plain paper, allegedly sent by O'Brien, to Hale, referencing two copies of an amended agreement "with the incorporated suggestions from your redraft and our telephone conversation," a proposed deed, a copy of a proposed realty trust, and a check made payable to Barbara, and (2) a check notation indicating a one dollar check dated September 5, 2007, referencing O'Brien and Barbara, as trustee.  The judge admitted this evidence de bene during trial and reserved his ruling for his decision.

Goddard argues that the trial judge erroneously excluded the unsigned letter from O'Brien to Hale based on the best evidence rule. The best evidence rule requires, "as a threshold matter," that the proponent "offer evidence sufficient to warrant a finding that the original [writing] once existed." Commonwealth v. Ocasio, 434 Mass. 1, 6 (2001). "If the evidence warrants such a finding, the judge must assume its existence, and then determine if the 'original had become unavailable, otherwise than through the serious fault of the proponent . . . and that reasonable search had been made for it.'" Id. at 7, quoting from Fauci v. Mulready, 337 Mass. 532, 540 (1958). See Mass. G. Evid. § 1004. If the judge finds in favor of the proponent on the sufficiency and fault questions, then the judge must allow the secondary evidence to be admitted to establish the contents of the writing at issue. Fauci, supra at 540. It is then up to the fact finder to determine what, if any, weight to give to the secondary evidence. See Buker v. Melanson, 8 Mass. App. Ct. 325, 331 (1979). In the instant jury-waived case, the judge was therefore responsible for determining both the admissibility of the unsigned letter and check evidence and the weight to give them in his findings of fact.

As an initial matter, we presume that the judge correctly instructed himself on the admissibility of evidence. See Cummings v. National Shawmut Bank of Boston, 284 Mass. 563, 568

(1933). Although the judge did not expressly so state, he appears to have found that there was sufficient evidence to warrant a finding that the original letter, revised agreement, and check existed at some point in time and that they were unavailable through no fault of Goddard. See Commonwealth v. Ocasio, supra. He then "reject[ed] [Goddard's] evidence that the letter, redrafted purchase and sale agreement, and check were mailed to Attorney Hale." This determination was based on the judge's credibility findings, particularly his findings that Hale was credible on the question and O'Brien was not.[14] See Mass. G. Evid. § 104. The judge wrote: "Though, the court possesses authority to determine that a mailing occurred on the basis of habit evidence, this court declines in the instant case to find persuasive proof that a habit was followed." In his weighing of the evidence, he also noted gaps and discrepancies between this evidence and other evidence presented at trial.[15]

---

[14] Hale testified that, upon careful review of his records, he could not find, nor did he remember receiving, a signed, amended agreement or any closing documents. Hale also denied having any conversations with O'Brien about a pending closing for sale of the property. In addition to Hale's testimony, there was extensive testimony from Richard indicating that he did not receive any communication from Hale regarding a closing or any correspondence from Goddard related to the deed.

[15] Specifically, the judge noted "the following gaps and discrepancies: (1) different dates on the check receipts compared to the letter; (2) the absence of any copy of the amended purchase and sale agreement; and (3) Goddard's and

Finally, as previously explained, it was well within the province of the judge's role as fact finder in this jury-waived trial to determine the ultimate credibility to assign to the secondary evidence presented.  See Buker v. Melanson, supra.  It was for the judge to weigh the evidence and assess credibility.

Judgment affirmed.

---

O'Brien's different recollections on the closing date in the so called 'clean copy.'"