NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-350

ADOPTION OF JOAN.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother and the child, Joan, appeal from the 2023 decree issued by a judge of the Juvenile Court terminating the mother's parental rights to Joan and providing for visitation after a review and redetermination trial.[2]  See G. L. c. 119, § 26 (c). The mother's appeal raises three issues:  (1) the trial judge abused her discretion in reopening the evidence in the 2021 best interests trial, see G. L. c. 119, § 26 (b); (2) evidence of the mother's unfitness at the 2023 review and redetermination trial was insufficient; and (3) the judge erred in restricting mother's posttermination and postadoption visitation.  Joan asserts on appeal that the judge's visitation order should be

_____

[1] A pseudonym.

[2] Joan's father's parental rights were terminated in October 2021.  He did not appeal.

expanded and further argues that Massachusetts law should be changed to give greater weight to the child's wishes in making orders for parental visitation. We conclude that the mother waived her procedural challenge, that the judge's decision was supported by clear and convincing evidence that the mother was permanently unfit, and that the judge acted within her discretion in crafting the visitation order. Accordingly, we affirm.

Background. We briefly summarize the procedural history of the case, reserving certain details for later discussion. In December 2020, the Department of Children and Families (department) removed five year old Joan from the mother's custody.[3] The department placed Joan with friends of the mother with whom Joan has lived throughout these proceedings.

On March 29, 2021, the mother filed a "Motion for Abuse of Discretion" in which she contended that the department failed to take certain procedural steps required under its regulations after Joan's removal and placement with the foster (now preadoptive) family. In an August 2021 addendum to that motion, the mother specifically contended that the department had abused its discretion by failing to provide her with a parent aide.

---

[3] This was the second care and protection action filed with respect to Joan. The mother's rights to three older children were terminated before these proceedings began.

In September 2021, the department filed a notice of intent to change its goal for the family from reunification to adoption. The judge conducted a best interests trial and, on October 18, 2021, found both of Joan's parents permanently unfit to parent her. The judge ordered a decree to enter terminating the father's parental rights to Joan but, consistent with the Joan's and the mother's requests, the judge did not terminate the mother's rights and returned conditional custody of Joan to the mother (October 18 order). See G. L. c. 119, § 26 (b). The October 18 order provided that "[t]he order of custody to Mother is stayed until November 23, 2021, pending a transition plan and comment on the Court's conditional custody order." The judge set a hearing date for this purpose on November 23, 2021.

On November 19, 2021, the department moved to reopen the trial evidence based on information included in a court report postdated November 23, 2021, prepared by a department social worker. Specifically, the social worker's report documented that the mother had been arrested on September 7, 2021, missed visits with the child later in the same month, and failed to notify the department that she had entered into a relationship with a convicted murderer. The mother objected to the motion arguing, inter alia, that the department knew or should have known about this evidence before the conclusion of the best interests trial. The judge allowed the motion over the mother's

3

objection and continued the existing stay of the October 18 order.

In March 2022, after a colloquy with the judge, the mother stipulated to her current unfitness and to Joan's commitment to the permanent custody of the department. As part of that stipulation, the mother agreed to the admission of a series of documentary exhibits -- including the November 23, 2021, court report -- and admitted to the statements of fact set forth in each document. The judge accepted the stipulation, made a finding of reasonable efforts to which no party objected, and set the matter down for a review and redetermination trial to decide the issue of the mother's parental rights to Joan.

The judge conducted that trial on May 22, 2023, July 6, 2023, and July 24, 2023. See G. L. c. 119, § 26. The mother testified on the first two days of trial. On the third day of trial, the mother did not appear to resume her testimony, and the judge drew an adverse inference from her failure to appear. The judge ultimately found that despite the department's reasonable efforts at reunification, the mother was permanently unfit to parent Joan. The judge ordered a decree to enter terminating the mother's parental rights, approved the department's permanency plan for Joan's adoption, and ordered posttermination and postadoption contact between the mother and Joan. The judge later issued detailed findings of fact and

4

conclusions of law supporting her decision.  The mother and Joan each filed a timely notice of appeal.

Discussion.  1.  Department's motion to reopen the evidence.  Although the mother preserved her objection to the department's motion to reopen the evidence in the 2021 best interests trial, we agree with the department that she waived that challenge when the judge accepted the March 2022 stipulation.  On appeal, the mother does not contend otherwise.  The evidence that the department sought to introduce at the hearing on the motion to reopen -- the social worker's November 23, 2021, court report -- was one of the exhibits to which the mother agreed when she entered into the stipulation.  See Goddard v. Goucher, 89 Mass. App. Ct. 41, 45 (2016), quoting Loring v. Mercier, 318 Mass. 599, 601 (1945) (factual stipulations bind parties and are respected by courts unless found to be "improvident or not conducive to justice").  The mother's contention that the 2023 trial was "tainted" by the judge's earlier consideration of a report to which the mother later stipulated is not persuasive.

2.  Termination of mother's parental rights.  a.  Standard of review.  "To terminate parental rights to a child, [a] judge must find, by clear and convincing evidence, that [a] parent is

5

unfit[4] and that the child's 'best interests will be served by terminating the legal relation between parent and child.'" Adoption of Luc, 484 Mass. 139, 144 (2020), quoting Adoption of Ilona, 459 Mass. 53, 59 (2011). "'[P]arental unfitness' means 'grievous shortcomings or handicaps' that put [a] child's welfare 'much at hazard.'" Adoption of Jacob, 99 Mass. App. Ct. 258, 262 (2021), quoting Adoption of Katharine, 42 Mass. App. Ct. 25, 28 (1997). "In ascertaining parental fitness, [a] judge 'may consider past conduct to predict future ability and performance.'" Adoption of Jacob, supra, quoting Adoption of Katharine, supra at 32-33. Parental unfitness "must be proved by clear and convincing evidence," Adoption of Rhona, 57 Mass. App. Ct. 479, 488 (2003), and we will disturb the judge's findings "only if they are clearly erroneous," Adoption of Paula, 420 Mass. 716, 729 (1995). We review the judge's determination of a child's best interests for an abuse of discretion. See Adoption of Hugo, 428 Mass. 219, 225 (1998),

_____

[4] Despite the moral overtones of the statutory term "'unfit,' the judge's decision was not a moral judgment or a determination that the mother" does not love the child. Adoption of Bianca, 91 Mass. App. Ct. 428, 432 n.8 (2017). The inquiry instead is whether the parents' deficiencies or limitations "place the child at serious risk of peril from abuse, neglect, or other activity harmful to the child." Care & Protection of Bruce, 44 Mass. App. Ct. 758, 761 (1998). We note that the mother and Joan have shown evident affection for each other, and none of the judge's findings suggest otherwise.

6

cert. denied sub nom. Hugo P. v. George P., 526 U.S. 1034 (1999). In conducting our review, we defer to the judge's assessment of the weight and credibility of the evidence. See Custody of Eleanor, 414 Mass. 795, 799 (1993).

c. Mother's unfitness. The judge's decision to terminate the mother's parental rights was supported by clear and convincing evidence of the mother's unfitness to parent Joan. See Adoption of Rhona, 57 Mass. App. Ct. at 488. Our review of the judge's 374 findings of fact and her conclusions of law satisfies us that the judge "[gave] the evidence close attention." Adoption of Nancy, 443 Mass. 512, 514-515 (2005). The judge properly considered the facts in the aggregate in assessing the mother's unfitness, see Care & Protection of Laura, 414 Mass. 788, 793 (1993), beginning with her consideration of the mother's March 2022 stipulation to her unfitness for its prognostic value. See Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption, 397 Mass. 659, 671 (1986); Custody of Two Minors, 396 Mass. 610, 621 (1986). It is evident from the judge's decision that although the judge considered a constellation of factors in determining the mother's parental fitness, she judge gave special weight to two factors that impaired the mother's ability to care for Joan: the mother's longstanding mental health problems and her repeated involvement in risky and violent domestic

7

relationships.  We defer to these assessments.  See Adoption of Stuart, 39 Mass. App. Ct. 380, 382 (1995).

The judge found that the mother's mental illness left her with a distorted view of reality that "impacts her ability to provide minimally acceptable care to [Joan]."  The judge acted within her discretion in reaching this conclusion.  See Adoption of Talik, 92 Mass. App. Ct. 367, 371 (2017).  It is readily apparent, however, that the judge's ultimate decision did not rest solely on that inference; her findings regarding the mother's mental health concerns are numerous and well-supported, and the mother does not challenge them.  The judge's findings that these concerns interfered with the mother's ability to parent Joan were likewise supported by the evidence and were relevant to the mother's parental fitness.  See Adoption of Luc, 484 Mass. at 146 & n.17.

The judge also expressed grave concerns that the mother continued to engage in risky personal relationships, as these choices reflected the mother's inability to recognize and protect against harm to Joan.  The mother was involved in "at least five" violent relationships.  Although she obtained restraining orders against some of these partners, she was not consistent about respecting the orders or seeking enforcement of

them.[5]  One of these partners abused the mother in front of Joan, see Adoption of Elena, 446 Mass. 24, 32 (2006), and, according to Joan, touched Joan's "privates."[6]  The mother stayed with this partner notwithstanding his treatment of her and flatly rejected the child's allegation that the partner touched her inappropriately.  See Adoption of Mary, 414 Mass. 705, 711 (1993).  In a decision that reflected a similar lack of insight as to Joan's safety, the mother had a live-in relationship with a level two sex offender whom she allowed to care for Joan, despite her awareness of his conviction of sexually abusing a child.  Later, the mother met and married another man while he was on parole following his guilty plea to a murder.[7]  The mother

_____

[5] The mother contends that the judge erred in finding that she allowed a restraining order against one of her violent partners to lapse after eight days.  Assuming, arguendo, that the judge's finding of "eight days" was error, it does not require reversal.  The mother confirmed that she allowed the order to lapse; putting the timing component of the challenged finding aside, we would still be satisfied that "the judge's over-all conclusion of parental unfitness is fully supported by the record."  Adoption of Helen, 429 Mass. 856, 859-860 (1999).

[6] Joan made this disclosure in the course of a department investigation into the mother's treatment of Joan and in the mother's presence.  When the mother questioned her, Joan responded, "Just kidding," and "shut down and ran to her bedroom."

[7] We are not persuaded by the mother's contention that the judge erred in considering evidence of these partners' prior criminal histories because the convictions were "stale."  The judge properly focused on the mother's judgment as reflected in her admitted attraction to violent people and her disregard of

9

was dishonest about the presence of domestic violence in her life at some times, minimized it at other times, and although she testified that she participated in some of the domestic violence counselling required as part of her action plans, the judge found that to the extent that she did so, she failed to benefit from the experience.  See Adoption of Lorna, 46 Mass. App. Ct. 134, 143 (1999).  All these facts were relevant to the mother's parental unfitness.  See Adoption of Paula, 420 Mass. at 729-730.

The judge also properly considered the mother's past history of criminal conduct as it related to her ability to ensure Joan's safety,[8] see Care & Protection of Thomasina, 75 Mass. App. Ct. 563, 576 (2009); the mother's problems with

_____

the potential risk that people with demonstrated violent or lawless histories could present to her and Joan.  The mother consistently lied to department workers about the fact and nature of her relationship with this person.  When she did disclose the fact of her marriage to this partner, she told department workers that she was afraid of him.

[8] The judge noted that the mother had an adult criminal history "beginning in 2007 and continuing through to 2022."  The mother's challenge to the judge's weighing of this evidence is not persuasive, particularly where the judge's findings demonstrate her focus on the portions of the mother's criminal record that reasonably bore on Joan's safety.  See Care & Protection of Quinn, 54 Mass. App. Ct. 117, 125-126 (2002) (parent's criminal record relevant to extent it bears on parental fitness).  See also Adoption of Ulrich, 94 Mass. App. Ct. 668, 676 (2019), quoting Custody of Michel, 28 Mass. App. Ct. 260, 269-270 (1990) ("a judge can consider a pattern of 'past conduct to predict future ability and performance'").

10

substance misuse, including her administration of her own prescription medication to Joan,[9] see <u>Care & Protection of Frank</u>, 409 Mass. 492, 494 (1991); the mother's lack of candor with the department and failure to comply with the department's requirements and recommendations,[10] see <u>Adoption of Rhona</u>, 63 Mass. App. Ct. at 126; and the mother's inability to appreciate and prioritize Joan's needs over her own, see <u>Adoption of Darlene</u>, 99 Mass. App. Ct. 696, 706 (2021).

---

[9] The judge's finding that the mother gave her prescription medicine to the child as a sleep aid was properly supported by evidence provided by the department social worker in a G. L. c. 119, § 51A, report to which the mother stipulated in March 2022. Moreover, the judge's findings reflect her awareness of the mother's denials that she improperly medicated Joan, the child's varying reports of which medications or supplements the mother gave her for sleep, and the credibility assessments that the judge made in resolving the question. See <u>Adoption of Stuart</u>, 39 Mass. App. Ct. at 382, quoting <u>Adoption of a Minor (No. 2)</u>, 367 Mass. 684, 688-689 (1975) ("Troublesome facts . . . are to be faced rather than ignored").

[10] The judge's finding that the mother did not promptly comply with the requirement of her action plans that she "ensure" that her department-mandated psychological evaluation "[was] available to the department" was not error. Although the mother completed the evaluation and signed releases authorizing the department to obtain the evaluator's report, the department was not able to obtain the report directly from the evaluator and the mother did not provide it until shortly before trial. In any event, the judge did not, as the mother suggests, rely on this finding to suggest that the mother withholding the results of the evaluation. Instead, the judge appears to have considered the delay in the department's access to the evaluation in her assessment of the department's ability to monitor the mother's compliance with the action plans and its reasonable efforts to provide the mother with necessary services.

c.  Reasonable efforts.  We discern no error in the judge's conclusion at the review and redetermination trial that the department made reasonable efforts toward reunification in this case.  To the extent that the mother's challenge predates the parties' March 2022 stipulation, it is waived.  The mother's argument that the department failed to make reasonable efforts to provide her with a parent aide in response to her request in February 2022 is unavailing.  The department provided the mother with a parent aide beginning in October 2021; the evidence supports the judge's findings that the parent aide services were discontinued in December 2021 after the mother missed three appointments with the aide.  Where the mother failed to take advantage of the services offered to her, the department was not required to continue to offer them.  See Adoption of Yalena, 100 Mass. App. Ct. 542, 535-536 (2021), and cases cited.

We are likewise unpersuaded by the mother's argument -- which as she acknowledges, is raised for the first time on appeal, see Adoption of West, 97 Mass. App. Ct. 238, 242 (2020) ("A parent cannot raise a claim of inadequate services for the first time on appeal, as the department would not have had the opportunity to address it") -- that the department failed to provide her with services to address her mental health concerns. The department recommended mental health counselling for the mother, but her participation and medication compliance were not

12

consistent, she was "consistently dishonest" with the department and her providers, and she failed to recognize the need for the recommended services.  As the judge noted, to the extent that the department-mandated psychological evaluation might have informed its action plans for the mother, the mother did not ensure that the department had the opportunity to review it until shortly before the termination trial began.  See id.

The mother's argument that the department failed to comply with its own disability policy is not persuasive where the mother does not identify any other services that the department should have provided to address her mental health and its effect on her parenting.

We are satisfied that the judge's comprehensive determination that the mother was unfit to parent Joan, that her unfitness was not temporary, that the department made reasonable efforts toward reunification, and that termination of the mother's rights was in Joan's best interests was supported by clear and convincing evidence and that the judge's ruling was the result of an even-handed assessment.[11]  See Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012).

---

[11] Neither the mother nor Joan challenges the judge's determination that termination was in Joan's best interests or the judge's approval of the department's permanency plan.

13

3.  Visitation order.  In her findings of fact and conclusions of law issued following the 2023 trial, the judge found, despite the mother's permanent unfitness to parent Joan "[t]hat there is a significant relationship between [Joan] and [the mother]"; the judge therefore ordered "a minimum of two (2) [posttermination and postadoption] visits per year between [them]."[12]  See Adoption of Rico, 453 Mass. 749, 754 (2009).  Contrast Adoption of John, 53 Mass. App. Ct. 431, 439 (2001) (remanding case for further proceedings where judge found visitation to be in child's best interests, but left question whether to allow posttermination visit in preadoptive parents' unfettered discretion).  In a contemporaneous "Order for Post Adoption Visitation," the judge reiterated the requirement "that [Joan] have access to and visitation rights with her biological mother throughout the period of her placement in the custody of the Commonwealth and subsequent to any guardianship or adoption

_____

[12] Because the judge "[had] already made specific and detailed findings regarding the child's best interests and the determination of parental unfitness," she was not required to make more extensive findings to support her visitation order.  Cf. Adoption of John, 53 Mass. App. Ct. 431, 439 (2001).

14

of said child."[13]  That order also included a minimum requirement of two visits per year.[14]

The record does not reflect that the judge had any reason to question the presumption that the department or Joan's preadoptive or adoptive parents will act in Joan's best interests in making this determination, see Adoption of Flavia, 104 Mass. App. Ct. 40, 55 (2024), and where the judge entered a specific order of visitation, we discern no need for a remand for additional findings on the department's or the preadoptive parents' willingness to provide the mother and Joan with appropriate visitation.  Contrast Adoption of Oren, 96 Mass. App. Ct. 842, 849-850 (2020).  We acknowledge that as both the mother and Joan point out, the judge's order does not entitle them to the same frequent contact the department permitted prior to the termination of the mother's rights, but view that change as consistent with the differing purposes of pre- and posttermination contact.  See Adoption of Vito, 431 Mass. 550,

---

[13] The judge's separate "Order for Post Adoption Visitation" is not in tension with the order included with the judge's findings and conclusions.  It provides for visits between the mother and Joan whether Joan is in the custody of the department or an adoptive family and sets the minimum frequency of these visits at two per year.

[14] The judge also provided for Joan's ability to write to the mother "at the discretion of her legal guardians or adoptive parents."  Nothing in the judge's order prohibits the mother from writing back to Joan.

15

564-565 (2000).  We accept that the judge's order is not tailored to the preferences of either the mother or Joan, but it was well-considered and within the judge's discretion to make.[15]  See Adoption of Terrence, 57 Mass. App. Ct. 832, 839 (2003).

Decree affirmed.

By the Court (Vuono, Meade & Hand, JJ.[16]),

Clerk

Entered:  December 11, 2024.

---

[15] Joan asks us to revisit existing Massachusetts precedent to require trial judges to give primary weight to the child's wishes in making custody determinations where the child's parent's rights are terminated.  The Supreme Judicial Court has determined that the child's wishes are not determinative, see, e.g., Adoption of Nancy, 443 Mass. at 518, and so we do not have the authority to take that step.

[16] The panelists are listed in order of seniority.