NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-262
23-P-264

MICHELLE STEWARDSON, trustee,[1]

vs.

EDWARD P. HARRINGTON, personal representative,[2] & another[3]
(and four consolidated cases[4] and a companion case[5]).

---

[1] Of the Greenspring Realty Trust.

[2] Of the estate of Leonard S. French.

[3] Julie A. Evans, as trustee of the Norwood Park South IV Trust. The lead appeal pertains to Superior Court Docket No. 1482CV940.

[4] Michelle Stewardson, trustee, & another vs. Edward P. Harrington, personal representative, & another (Docket No. 1482CV941); Michelle Stewardson, trustee, vs. Edward P. Harrington, personal representative, & others (Docket No. 1482CV942); Michelle Stewardson, trustee, vs. Edward P. Harrington, personal representative, & others (Docket No. 1482CV943); Michelle Stewardson, trustee, vs. Sally J. Winters, trustee, & another (Docket No. 1482CV944).

[5] The companion case is a consolidated appeal from judgments of contempt addressing multiple contempt complaints in Docket Nos. 1482CV940, 1482CV941, 1482CV942, and 1482CV943.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This matter arises from a dispute regarding the amount of distributions owed to Joseph Verna from five joint real estate ventures:  Norwood Park South IV Associates (NPS IV), Norwood Park South VI Associates (NPS VI), Silver Maple Associates (Silver Maple), PAR Associates (PAR), and Franklin South Realty Associates (Franklin South).[6]  In July 2014, Verna brought a separate action for each joint venture, claiming that he had not received his full distributions and seeking accountings and damages (merits actions).[7]  Subsequently, Verna filed contempt complaints in four of the merits actions -- the NPS IV, NPS VI, Silver Maple, and PAR actions -- claiming that the managers of those joint ventures did not comply with consent orders entered in the corresponding merits actions requiring them to provide accountings and produce books and records (contempt actions).

---

[6] Verna held his interests in the joint ventures through two trusts:  the Greenspring Realty Trust, of which he was the trustee, and the JIVE Family Trust 2008, of which his attorney, David Hern, Jr., was the trustee.

[7] As a technical matter, Verna commenced the NPS IV, Silver Maple, PAR, and Franklin South actions as the trustee of the Greenspring Realty Trust, and Verna and Hern commenced the NPS VI action as the trustees of the Greenspring Realty Trust and the JIVE Family Trust 2008.  See note 6, supra.  Since bringing the merits actions, Verna has passed away, and a successor trustee has been substituted in his place.  For ease of reference, we refer to the successor trustee as Verna.

2

Judgments on the merits actions entered on July 15, 2022. Those judgments awarded Verna damages in four of the merits actions -- the NPS IV, NPS VI, PAR, and Franklin South actions -- plus costs and statutory interest running from the date of the complaints, provided that interest was tolled for the period from January 1, 2019, to May 31, 2021. However, the judgments did not award Verna precomplaint interest or attorney's fees. The judgments also awarded Verna damages and attorney's fees in the contempt actions, plus costs and statutory interest running from the date of the judgments. Verna appeals. With respect to the merits actions, we affirm. With respect to the contempt actions, we affirm in part, vacate in part, and remand for reconsideration of attorney's fees.

Background. Before we turn to the facts underlying these appeals, we note that Verna filed a sixth action pertaining to another joint venture. The sixth action, referred to as the Motel Realty action, was tried separately as a bellwether case and was the subject of a prior appeal.[8] See Stewardson v. Winters, 101 Mass. App. Ct. 1119 (2022). The Motel Realty case,

_____

[8] The judge who presided over the bench trial of the Motel Realty action also presided over the bench trial of the merits actions currently on appeal. The same judge also decided the merits of the contempt actions, although different judges heard some preliminary matters related to the contempt actions.

including our discussion of the issues in the appeal, are relevant to the conclusions we reach here, and we rely, in part, on the analysis set forth in the unpublished memorandum and order.

Verna participated in the joint ventures with Leonard S. French.[9] Verna and Leonard structured each joint venture similarly. For each joint venture, Verna and Leonard created a separate trust solely to hold the joint venture's assets. Leonard was a manager of NPS IV, NPS VI, Silver Maple, PAR, and Franklin South, as well as the trustee of the corresponding trusts for NPS IV, NPS VI, Silver Maple, and PAR. Leonard's wife, Shirley A. French, was a comanager of Silver Maple and PAR, although her role was limited to occasionally writing checks at Leonard's request. Leonard's daughter, Sally J. Winters, was the trustee of the Franklin South trust. However, Leonard effectively served as the manager of all the joint ventures, with Verna's full knowledge and consent. In addition, despite the legal distinctions between the joint ventures and the trusts, Verna and Leonard treated each joint venture and its corresponding trust as a single financial entity. Leonard kept

---

[9] As we discuss, Leonard French's wife, Shirley A. French, is also a party to this case. Accordingly, we refer to them individually by their first names and collectively as French.

4

accounts and records for the trusts but not the joint ventures themselves. Verna held a 12.5 percent interest in each joint venture.

As noted, Verna brought the merits actions in July 2014.[10] The requests for relief included (1) accountings of the joint ventures and trusts and (2) damages. In September 2014, consent orders entered in the NPS IV, NPS VI, Silver Maple, and PAR actions requiring French to provide accountings and produce books and records for the joint ventures and trusts. It is undisputed that French did not provide accountings in a timely fashion or produce all books and records in his possession or control.[11] As a result, Verna was required to obtain missing records from various third parties through the issuance of

---

[10] Verna brought the NPS IV, NPS VI, Silver Maple, and PAR actions against Leonard, individually and as trustee of the NPS IV, NPS VI, Silver Maple, and PAR trusts. Verna also named Shirley as a defendant in the Silver Maple and PAR actions. Separately, Verna brought the Franklin South action against Leonard, individually, and Winters, as trustee of the Franklin South trust. Leonard has since passed away, and a successor personal representative and successor trustees have been substituted in his place. For ease of reference, we refer to the successor personal representative and successor trustees as Leonard.

[11] We reserve for later discussion the background pertinent to the contempt actions, infra.

5

keeper of the record subpoenas.[12]  However, some records still remained missing.  For example, with respect to Silver Maple, Verna was able to obtain bank statements but not copies of canceled checks for the years prior to 2009.  After Verna collected the available records, French hired a financial expert to prepare accountings, which French provided to Verna on March 3, 2017.  It is also undisputed that the expert relied, at least in part, on the records obtained by Verna.

Shortly thereafter, Leonard passed away, and the trial on the merits actions was delayed until June 2021.  French's expert testified at trial, as did a financial expert retained by Verna.[13]  The experts offered very different views of the books and records.  French's expert treated each joint venture and its corresponding trust as a single financial entity, whereas Verna's expert calculated revenue for each joint venture and its corresponding trust separately.  The experts also disagreed, at least in some respects, on the amount of certain expenses and the value of certain assets.

---

[12] As mentioned, there were no records for the joint ventures, themselves; the records that were obtained were all for the trusts.

[13] While Verna's expert testified regarding his opinion on the amount of money due to Verna, he explicitly stated that he did not prepare accountings of the joint ventures or trusts.

The trial judge adopted the methodology and calculations of French's expert. The judge found that Leonard managed the joint ventures at the trust level "with the full knowledge and consent of . . . Verna over a period of decades," and that it was therefore "fair and logical" to treat the joint ventures and their corresponding trusts as single financial entities. The judge also found that Verna's expert "frequently ignored relevant financial information that was available to him in conducting his analysis." For example, Verna's expert "did not include expenses for mortgage payments on the Silver Maple [p]roperty after 2014, even though copies of the relevant mortgage documents were available to him and regular mortgage payments in and after 2014 were reflected in the Silver Maple monthly bank account statements." Based on the testimony of French's expert, the judge found that Verna was owed distributions in the following amounts: $96,745.75 for NPS IV; $37,032.40 for NPS VI; nothing for Silver Maple; $136 for PAR; and $60,035.75 for Franklin South.[14]

---

[14] In the NPS IV, NPS VI, and PAR actions, the judgments entered against Leonard's estate. In the Franklin South action, the judgment entered against Leonard's estate and Winters, as trustee of the Franklin South trust. The trial judge did not find Shirley individually liable in the Silver Maple and PAR actions.

7

Discussion. 1. Merits actions. a. Accountings. Verna raises several arguments challenging the trial judge's calculations of the distributions owed to him. Primarily, Verna argues that the judge's methodology was flawed. In addition, Verna argues that the judge erred in determining the trusts' legitimate expenses and the value of assets. We address each argument in turn.

i. Methodology. Verna's primary argument on appeal is that the trial judge was required to consider the account of each joint venture and the account of its corresponding trust separately. Verna relies, in part, on the fact that his prayers for relief requested separate accountings. As an initial matter, Verna does not explain how the amount of damages would have been any different had the judge proceeded in the manner he requested. Verna also does not point us to any analogous cases requiring separate accountings where the parties, themselves, treated separate entities as a single financial entity. Accordingly, we conclude that Verna has not met his burden on appeal of establishing grounds to vacate and remand for separate accountings. See, e.g., Krasne v. Tedeschi & Grasso, 436 Mass. 103, 108 (2002).

ii. Expenses. Verna's argument regarding expenses stems from the fact that some records remained missing at trial.

8

Verna argues that (1) French's expert used public accounting concepts to fill in some of the missing information and (2) the trial judge erroneously relied on the expert's conclusions regarding the missing information to find allowable expenses that were not documented in the available books and records.[15] The argument is unavailing.  The Supreme Judicial Court has "recognize[d] that even a corporate officer who has acted with scrupulous propriety may be faced with very serious practical problems when called upon to account for expenditures made over a period of years and periodically drawn or reimbursed in accordance with current practice in the particular corporation" and that there may be times when "an officer may be able to meet his obligation to account by showing in general terms the nature, purpose, and extent of such expenditures."  Samia v. Central Oil Co. of Worcester, 339 Mass. 101, 127 (1959).[16]  That is what French did here.  He presented an expert who reviewed the available books and records and used her knowledge of public

_____

[15] Verna does not identify the specific expenses he believes were found in error but says that they total in the "tens of thousands of dollars."

[16] In Samia, 339 Mass. at 127 & n.11, the Supreme Judicial Court was "not called upon to consider to what extent such an officer may be able to meet his obligation to account" through something other than direct documentation in the books and records but noted several scenarios where the evidence would be sufficient.

9

accounting concepts to fill in some of the missing information. The judge permissibly credited the expert's testimony.[17]  See The Woodward Sch. For Girls, Inc. v. Quincy, 469 Mass. 151, 170 n.29 (2014) ("judge is entitled to credit any properly admitted expert testimony he or she deems credible").

    iii.  Assets.  As to the assets, Verna makes two arguments. His first argument pertains to PAR and whether PAR was the beneficial owner of one or two parcels of land.  We briefly describe the background underlying this argument.  There is no dispute that PAR was the beneficial owner of the first parcel of land.  As to the second parcel, Leonard executed two deeds on November 13, 2012 that had the effect of conveying the parcel to PAR:  (1) as trustee of the French Realty Trust and the Baver-Norwood Trust, Leonard executed a corrective quitclaim deed conveying the parcel to NPS IV and (2) as trustee of the NPS IV trust, Leonard executed a confirmatory quitclaim deed conveying the parcel to PAR.  The same day, PAR sold both parcels to a third party.  Leonard testified at his deposition, a transcript

_____

    [17] Verna relies on the broad proposition that all allowable expenses had to be documented in the books and records. Notably, he does not argue that the testimony of French's expert regarding the nature, purpose, and extent of any specific expense was insufficient. See note 15, supra.  Accordingly, we do not address whether the expert's testimony as to any specific expense was sufficient.

of which was admitted in evidence, that he conveyed the second parcel to PAR for the sole purpose of consummating the sale and that the French Realty Trust and the Baver-Norwood Trust were the beneficial owners of the second parcel.  The trial judge appears to have credited this evidence and found that the French [Realty] Trust and the Baver-Norwood Trust, as opposed to PAR, were the beneficial owners of the second parcel.  Verna argues that this finding was unsupported by the evidence and was "foreclosed by operation of statute," citing G. L. c. 183, §§ 11, 17.[18]  However, the evidence discussed above supports the judge's finding.  As to Verna's statutory argument, which is made without further explanation or support, the argument does not rise to the level of appellate argument and is waived.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

Verna also argues that certain payments made to Leonard, his family, or their businesses were assets in the form of income-generating loans and that the trial judge erred in

---

[18] General Laws c. 183, § 11, sets forth the covenants and warranties that come with quitclaim deeds; G. L. c. 183, § 17, provides that, in conveyances of real estate, the words "quitclaim covenants" and "limited covenants," have a specific meaning, as set forth in the statute.

finding that the payments were instead distributions.[19]  On this point, there was contradictory evidence.  For example, some ledger entries for checks written against the trusts to Leonard, his family, or their other businesses stated that the funds were loans.  However, other evidence showed that the funds were not loans, including the fact that no promissory notes or other formal documentation memorialized the transactions as loans.  In addition, French's expert offered opinion testimony that the transactions were not loans and that members of closely held family businesses sometimes label distributions as loans to avoid tax consequences.[20]  It was within the judge's province to weigh this conflicting evidence and conclude that the transactions were distributions, not loans.  See Goddard v. Goucher, 89 Mass. App. Ct. 41, 49-50 (2016).

b.  <u>Interest and attorney's fees</u>.  Verna also argues that he was entitled to precomplaint interest and attorney's fees in the merits actions, and that the trial judge abused his discretion in tolling the accrual of postcomplaint interest.

---

[19] The characterization of the transactions mattered because Verna sought imputed interest on loans.

[20] That is what the trial judge found occurred here.  While Verna argues that the judge's finding "condon[ed] attempted criminality," we disagree.  The judge found the facts based on the evidence.  Whether Leonard should face any tax penalties for his actions was not before the judge.

Verna's arguments regarding precomplaint interest and attorney's fees are based on the unfounded premise that he was pursuing the merits actions to protect the trusts' assets for all the trusts' beneficiaries. Verna argues that precomplaint interest was necessary to restore the trusts' assets to what they would have been had the trusts been properly administered, see Berish v. Bornstein, 437 Mass. 252, 270-271 (2002), and that he was entitled to attorney's fees for bringing a successful action to protect common funds, see Coggins v. New England Patriots Football Club, Inc., 406 Mass. 666, 669 (1990). Verna made the same arguments in the Motel Realty action, and they fail for the same reason here as they did in that action. In sum, Verna brought the merits actions to obtain damages for himself, individually, not to protect the trusts' assets for all the trust's beneficiaries.[21]

As to the tolling of the accrual of postcomplaint interest, Verna has ignored the fact that the trial judge also tolled the accrual of postcomplaint interest in the Motel Realty action and that the judge's reasoning for doing so was the same as his reasoning in the merits actions currently on appeal. And, more

---

[21] As Verna testified, he only wanted the 12.5 percent due to him, and it did not matter to him what happened to the other 87.5 percent.

13

importantly, a panel of this court affirmed the judge's decision in the Motel Realty action. Where Verna does not offer any reason why we should reach a different result here, we refer the parties to the analysis of the issue as set forth in the Motel Realty decision and reject the claim.

    c. Shirley's liability. Verna's final argument regarding the merits actions is that Shirley committed gross negligence in her comanagement of Silver Maple and PAR and that the trial judge erred in not holding her individually liable in those actions.[22] See note 14, supra. In arguing that Shirley committed gross negligence, Verna asserts that (1) Shirley, as a comanager, was contractually required to manage the joint ventures' assets, maintain accurate books and records, and keep each joint venture's money in an account in the name of the joint venture and (2) Shirley acted in dereliction of these obligations. The argument disregards that Leonard effectively served as the manager of the joint ventures, that he did so with

_____

    [22] While, normally, Shirley would have been held to a fiduciary obligation of utmost good faith and loyalty, see Cardullo v. Landau, 329 Mass. 5, 8 (1952), the pertinent joint venture agreements expressly provided that "[n]o member of the Management Committee shall be liable to the Venturers or to the Venture by reason of his acts or decision as such, except in the case of his gross negligence or actual fraudulent or dishonest conduct." Verna does not dispute that the joint venture agreements control.

14

Verna's full knowledge and consent, and that Shirley's role was limited to occasionally writing checks at Leonard's request. Where Verna consented to this arrangement, he cannot complain now that Shirley should have been held responsible.

2. Contempt actions. On September 15, 2014, Verna filed civil contempt complaints in the NPS IV, NPS VI, Silver Maple, and PAR actions alleging noncompliance with the consent orders that required French to provide accountings and produce books and records. At a September 30, 2014 hearing, a Superior Court judge (first motion judge) gave French until October 28, 2014, to comply on the condition that if he did not do so, he would be assessed a daily sanction of $200.

On November 24, 2014, Verna filed a second set of contempt complaints, along with requests for attorney's fees incurred in connection with the first set of contempt complaints. At a December 23, 2014 hearing, another Superior Court judge (second motion judge) gave French until January 15, 2015, to comply and denied Verna's requests for fees. The second motion judge relied on affidavits filed by Leonard attesting that he had produced the books and records in his possession or control. On January 6, 2015, the first motion judge allowed Verna's requests for fees, apparently not realizing that the second motion judge had denied them.

15

Following a dispute over whether Verna's requests for fees incurred in connection with the first set of contempt complaints had been allowed, the trial judge issued an order on October 3, 2016, in which he ruled that the second motion judge's denial controlled and also stated that "[n]o attorney's fees or costs are awarded to [Verna] on his [s]econd [set of contempt complaints]." At the time, however, Verna had not made a request for fees incurred in connection with his second set of contempt complaints. The trial judge's October 3, 2016 order also increased the amount of the daily sanctions in the Silver Maple action to $250.

In December 2015 and November 2016, Verna filed a third set of contempt complaints.[23] Then, on June 23, 2017, Verna filed a fourth and final contempt complaint in the NPS IV action.[24] On April 20, 2022, the trial judge issued an order outlining how he planned to address the remaining issues pertaining to the contempt actions. The judge stated that the first and second sets of contempt complaints were fully resolved and limited the issues to (1) whether French failed to produce, "in a timely fashion, documents or information that he eventually provided

---

[23] Verna filed the third contempt complaint in the Silver Maple action on December 1, 2015. He filed the remainder of the third set of contempt complaints on November 16, 2016.

[24] The judgments all entered against Leonard's estate.

16

to, or made available to [the parties' experts]" and (2) "[i]f so, what [were] the actual, demonstrable damages that [Verna] incurred."  The judge also limited the hearing to two hours. Following the hearing, the judge found that Verna's damages equaled the costs and attorney's fees incurred to obtain records from third parties.  The judge also awarded Verna attorney's fees incurred in connection with the third set of contempt complaints and the fourth NPS IV contempt complaint, although he found that much of the work across the contempt complaints was duplicative and reduced the requested fees by eighty percent.

a.  No trial on second set of contempt complaints.  Verna argues that he was entitled to a trial on the second set of contempt complaints and was not afforded one.  However, all the contempt complaints went to the same underlying issue:  whether French provided accountings and produced all books and records in his possession or control.  The trial judge adjudicated this issue in addressing the third set of contempt complaints and the fourth NPS IV contempt complaint.  Verna also argues that the relief awarded by the judge did not fully compensate him for the harm resulting from French's noncompliance.  We address that argument below.

b.  Attorney's fees on the first and second sets of contempt complaints.  Verna raises a number of arguments in

17

support of his position that he should have been awarded attorney's fees incurred in connection with the first and second sets of contempt complaints.[25]  While a trial judge has broad discretion to award attorney's fees against a contumacious party, see Passatempo v. McMenimen, 461 Mass. 279, 304 (2012), it appears from the record that the decisions not to award attorney's fees incurred in connection with the first and second sets of contempt complaints were based on facts that were later found not to be true.  The second motion judge's December 23, 2014 denial was grounded in Leonard's affidavits attesting that he had produced the books and records in his possession or control, but it is now undisputed that French did not do so. The trial judge then relied on the second motion judge's December 23, 2014 decision to conclude that Verna was not entitled to attorney's fees incurred in connection with his second set of contempt complaints.  On this record, and in light of the facts that were eventually found, we conclude that the second motion judge and trial judge may have "made a clear error

---

[25] In particular, Verna argues that (1) the second motion judge abused his discretion in denying Verna's requests for fees incurred in connection with the first set of contempt complaints, (2) on October 3, 2016, the trial judge erred in denying requests for fees that Verna had not yet made, and (3) on April 20, 2022, the trial judge erred in concluding that the first and second sets of contempt complaints were fully resolved.

of judgment in weighing the factors relevant to the decision"
(quotation and citation omitted).  L.L. v. Commonwealth, 470
Mass. 169, 185, n.27 (2012).  Accordingly, we remand for
reconsideration of whether Verna is entitled to attorney's fees
incurred in connection with the first and second sets of
contempt complaints.

c.  Scope of final hearing on contempt actions.  Verna also
argues that the trial judge's April 20, 2022 order improperly
restricted the parameters of the final hearing on the contempt
actions.  Verna argues both that (1) the judge placed an
unreasonable two-hour time limitation on the hearing and (2) the
judge limited the substantive scope of the hearing too narrowly.

With respect to the time limitation, Verna argues that the
trial judge's decision was motivated by "judicial fatigue"
rather than "an informed analysis of case-specific
circumstances, including but not limited to the complexity of a
case and the parties' representations of their needs."
Babaletos v. Demoulas Super Mkts., Inc., 493 Mass. 460, 466
(2024).  We are not persuaded.  Having reviewed the transcript
of the hearing, we conclude that the judge's deep familiarity
with the case enabled him to conduct an efficient hearing on the
contempt actions.  Regardless, we note that Verna did not come

19

to the hearing prepared to present any witnesses, and he has not shown what he would have done differently with more time.

With respect to the substantive scope of the hearing, Verna argues that he did not have an opportunity to show that French failed to provide accountings in a timely fashion, and that the judge therefore did not have the opportunity to consider whether to award Verna damages or sanctions. However, a review of the hearing transcript reveals that Verna did raise this issue. At the hearing, the parties' attorneys argued whether Verna would have incurred the expense of having his attorney and expert review the financial records had French provided the accountings in a timely fashion, and the judge engaged with Verna's attorney and asked him questions on this point. The judge's decision on the contempt actions, which did not award damages or sanctions in connection with French's failure to provide accountings in a timely fashion, implicitly reflects that the judge did not find Verna's argument persuasive. Cf. Jones v. Clark, 272 Mass. 146, 149 (1930) (judge's ultimate findings of fact can import requisite subsidiary findings necessary to support ultimate finding).

d. Reduction to attorney's fees on the third set of contempt complaints and the fourth NPS IV contempt complaint. Lastly, Verna argues abuse of discretion in the trial judge's

20

decision to reduce by eighty percent the amount of attorney's fees that Verna requested on the third set of contempt complaints and the fourth NPS IV contempt complaint. We are not persuaded. Determination of the amount of reasonable attorney's fees rests within the sound discretion of the trial judge. See Tatar v. Schuker, 70 Mass. App. Ct. 436, 451 (2007). Here, the judge had reason to reduce the amount of the fee request where, as the judge found, much of the work across the contempt complaints was duplicative. There was no abuse of discretion.[26]

Conclusion. So much of the judgments as denied an award of attorney's fees on the first and second sets of contempt complaints is vacated, and the matter is remanded to the Superior Court for reconsideration of that narrow issue. In all other respects, the judgments are affirmed.

So ordered.

By the Court (Vuono, Englander & Hodgens, JJ.[27]),

Clerk

Entered: January 24, 2025.

---

[26] The parties' requests for appellate attorney's fees are denied.

[27] The panelists are listed in order of seniority.

21